Lloyd CHRISTIANSON, and another, and Wayne H. Rusch as Special Administrator for Michelle Christianson, Plaintiffs-Appellants, v. DOWNS, Defendant-Respondent.†

Supreme Court

*No. 76–491. Argued May 30, 1979.—Decided June 29, 1979.*
(Also reported in 279 N.W.2d 918.)

† Motion for reconsideration denied, with costs, on August 27, 1979.

For the appellants there was a brief by *Schlotthauer, Johnson & Mohs* and oral argument by *Conrad Johnson,* all of Madison.

For the respondent there was a brief by *Carroll Metzner* and *Bell, Metzner & Seibold, S.C.,* of Madison, and oral argument by *Carroll Metzner.*

HEFFERNAN, J. The appeal is from a judgment dismissing on the merits the action by the parents and special administrator of Michelle Christianson for her wrongful death from measles complicated by encephalitis and for her pain and suffering prior to her death. The judgment was entered after the court granted the motion of the defendant, Dr. David Ross Downs, for dismissal on the ground of insufficiency of the evidence, pursuant to sec. 805.14(3), Stats. The only issue on

appeal is whether the trial court properly dismissed the action for insufficiency of the evidence. We hold that it did.

This action was tried before a jury. At the close of plaintiffs' evidence, the defendant moved for dismissal pursuant to sec. 805.14(3), Stats., which provides:

"MOTION AT CLOSE OF PLAINTIFF'S EVIDENCE. At the close of plaintiff's evidence in trials to the jury, any defendant may move for dismissal on the ground of insufficiency of evidence. If the court determines that the defendant is entitled to dismissal, the court shall state with particularity on the record or in its order of dismissal the grounds upon which the dismissal was granted and shall render judgment against the plaintiff."

As the Judicial Council Committee Note—1974 points out, the motion to dismiss under sec. 805.14(3), Stats., replaces the old motion for involuntary nonsuit, which was functionally equivalent to a motion to dismiss.

The standard for ruling on a motion to dismiss on the ground of insufficiency of the evidence is set out in sec. 805.14(1), Stats.:

"TEST OF SUFFICIENCY OF EVIDENCE. No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party."

This standard is the same as that used to rule on the old motion for involuntary nonsuit. *Nelson v. Travelers Insurance Co.*, 80 Wis.2d 272, 278, 259 N.W.2d 48 (1977); *Master Plumbers Limited Mutual Liability Co. v. Cormany & Bird, Inc.*, 79 Wis.2d 308, 312, 255 N.W.2d 533 (1977). A motion for dismissal for insufficiency of the evidence should not be granted unless there is no credible

evidence to support a finding in favor of the plaintiff when all credible evidence and reasonable inferences therefrom are considered in the light most favorable to the plaintiff. This test serves the purpose of preserving a litigant's right to a jury determination of factual disputes. *Household Utilities, Inc. v. Andrews Company, Inc.,* 71 Wis.2d 17, 28, 236 N.W.2d 663 (1976).

Michelle Christianson died on April 26, 1975, at the age of six from measles complicated by encephalitis. Dr. Downs, a Dodgeville, Wisconsin, physician specializing in family practice, was called adversely and testified that he delivered Michelle and her twin brother, Michael, in 1968 and that he was their family physician from birth until the time of Michelle's death.

The record shows that Dr. Downs never saw Michelle during April of 1975. He did, however, twice see Michael that month, on April 12 and 14. At the time of the first visit the boy had a fever and a sore throat. By the second visit he had a measles-like eruption of the skin. Dr. Downs made a note concerning the second visit in Michael's medical chart: "Throat not sore—conjunctivae OK." The doctor knew at the time that there were measles in the Dodgeville area and that Michael had not been vaccinated against measles.

Dr. Downs said he did not know at the time he saw Michael whether Michelle had been vaccinated for measles because he did not have her chart in hand. Marie Christianson, mother of the twins and one of the plaintiffs, testified that she had told Dr. Downs that she was worried about Michelle because the girl had not had measles or a measles vaccination. The doctor disputed this testimony, saying that he did not recall any discussion about Michelle and measles on either April 12 or 14.

Dr. Downs never testified concerning what his diagnosis of Michael's condition was on either of the dates he saw him, if in fact he made a diagnosis. He was never asked what his diagnosis was at the time. He

did testify that, considering the case in retrospect, he was sure at the time of trial that Michael had had measles when he saw him in April of 1975.

Michelle became ill on April 23, 1975. Her disease progressed rapidly and she was admitted to the hospital on April 26 and died later that day. Dr. Downs did not participate in her admission to the hospital or her treatment while there. There is no death certificate in the record, but the defendant himself testified that Michelle Christianson died as a result of a measles infection.

The plaintiffs called as an expert witness Dr. Conrad Andringa, a pediatrician. In an offer of proof out of the hearing of the jury, he gave this opinion:

"I feel that the girl twin should have received therapy *if* the brother had measles at that time . . . . if a child has measles those who have close personal contact with that child who have not received immunization should receive gammaglobulin to prevent measles occurring in that child." (Emphasis supplied.)

In his actual testimony, he stated, "I believe that gammaglobulin should have been given to the twin girl if the diagnosis of measles is made to prevent measles in the twin girl."

Dr. Andringa testified that a dose of gammaglobulin would have prevented measles and the resulting encephalitis and that death would then not have occurred. He also said that a person who already has measles cannot be treated except with supportive therapy to help control the symptoms and make the patient more comfortable. He said a doctor has a responsibility to identify other members of a family or contacts who have not had measles. Asked by the court if this would be so if there were no diagnosis of measles, Dr. Andringa said the symptoms given to him pointed to measles.

On cross-examination, Dr. Andringa said early symptoms of measles include a cough, conjunctivitis (redness

or watering of the eyes), and Koplik's spots (small white patches in the mouth, on the inside surface of the cheeks and lips). With none of these symptoms present in a patient, he said, a doctor could reasonably make a diagnosis that the patient did not have measles, even with measles present in the community. Dr. Andringa was never asked whether Dr. Downs should have diagnosed Michael's illness as measles, given the symptoms described, in order to meet the accepted standard of medical care.

At the close of the plaintiffs' evidence, the defendant moved for dismissal of the action for insufficiency of the evidence. The trial court gave a detailed oral decision and granted the motion. The trial court correctly and clearly analyzed the elements of proof necessary for the plaintiffs to establish a prima facie case to get to the jury. The plaintiffs had to provide a basis for the jury to find: (1) that Dr. Downs either diagnosed Michael Christianson's illness as measles or that he negligently failed to do so, and (2) that Dr. Downs should have treated Michelle with gammaglobulin to prevent measles.

The trial court found that there was no expert testimony to serve as a basis for the jury that Dr. Downs diagnosed measles in the boy or that he negligently failed to do so.

The trial court had forewarned plaintiffs' counsel of the necessary elements of proof to set out a prima facie case. In a conference out of the hearing of the jury, when the court was considering the admissibility of Dr. Andringa's testimony, made first in an offer of proof, the court stated:

"Certainly there must be times when there is a misdiagnosis. I'll permit the doctor [Dr. Andringa] to answer these questions in the presence of the jury, but I am also going to rule that since he has put into his answer the 'if' that he put in, and that is that the girl

should have received therapy if the brother actually had measles at that time, I think that in order for you to get to a jury, Mr. Johnson, you will have to produce expert medical testimony to show that the diagnosis of Michael was negligently made."

The plaintiffs' expert conditioned his opinion that gammaglobulin should have been given to Michelle upon a diagnosis of measles in Michael. For this reason, in order to make out a prima facie case, the plaintiffs had to present evidence either that Dr. Downs made a diagnosis of measles or that he negligently failed to do so. They failed, however, to establish either that measles was diagnosed or that, regardless of what diagnosis was actually made, measles should have been diagnosed.

The law governing this case is well settled. A doctor is not an insurer or guarantor of the correctness of his diagnosis; the requirement is that he use proper care and skill. *Knief v. Sargent,* 40 Wis.2d 4, 8, 161 N.W.2d 232 (1968). The question is not whether the physician made a mistake in diagnosis, but rather whether he failed to conform to the accepted standard of care. *Francois v. Mokrohisky,* 67 Wis.2d 196, 201, 226 N.W.2d 470 (1975).

Dr. Downs testified that, in retrospect, he was sure at the time of trial that Michael had had measles in April of 1975. But this opinion did not establish that a failure to diagnose measles at the time would have constituted negligence. A doctor is not required to be right, but only to use proper skill and care.

Unless the situation is one where the common knowledge of laymen affords a basis for finding negligence, expert medical testimony is required to establish the degree of care and skill required of a physician. *Burnside v. Evangelical Deaconess Hospital,* 46 Wis.2d 519, 523–25, 175 N.W.2d 230 (1970); *McManus v. Donlin,* 23 Wis.2d 289, 297, 127 N.W.2d 22 (1964). For example,

laymen may be able to conclude that there was negligence, without expert testimony, where a sponge or surgical instrument was left in an incision or where the wrong organ or other body part was removed in surgery. *Francois v. Mokrohisky, supra* at 204; *Burnside v. Evangelical Deaconess Hospital, supra* at 523.

Measles is a disease more within the realm of common experience than many others, but medical expertise is required in its diagnosis and prevention. Expert testimony was necessary in the instant case to establish the standard of care.

There was no expert testimony on which to base a finding of negligent failure to diagnose measles. Dr. Andringa said that the symptoms described pointed to measles, but he did not say that measles had to be diagnosed in order for Dr. Downs to meet the accepted standard of care. In fact, Dr. Andringa testified that, in the absence of three particular symptoms, it was not unreasonable to fail to diagnose measles. No proof was offered that any of the three symptoms was present.

Because Dr. Andringa conditioned his opinion that Michelle should have been immunized upon a diagnosis of measles in Michael, evidence that Dr. Downs made a diagnosis of measles in Michael or that he negligently failed to diagnose measles was essential to a prima facie case. The plaintiffs failed to produce such evidence. We conclude that the trial court had no choice but to dismiss the action on the ground of insufficiency of the evidence.

*By the Court.*—Judgment affirmed.

ABRAHAMSON, J., took no part.