Dr. John ALBERT, Plaintiff-Respondent,

v.

Douglas WAELTI, Defendant-Appellant.

Court of Appeals

*No. 85-0659. Submitted on briefs May 23, 1986.—Decided August 7, 1986.*

(Also reported in 394 N.W.2d 752.)

DYKMAN, J., dissents.

For the appellant, the cause was submitted on the brief of *Max H. Klein* of Middleton.

For the respondent, the cause was submitted on the brief of *John M. Moore* and *Jan A. Smokowicz* of *Bell, Metzner & Gierhart, S.C.* of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J.    Douglas Waelti appeals from a judgment dismissing his dental malpractice claim against Dr. John Albert. The propriety of the dismissal is the sole issue, and we resolve it against Waelti.[1]

The facts are not in dispute. In 1982, Albert sued Waelti in small claims court to recover $214.36 for dental services rendered. Waelti counterclaimed, seeking damages of $300,000 for Albert's alleged negligence in

---

[1] Waelti also challenged the trial court's denial of his request for a jury trial. Because we conclude that the counterclaim was properly dismissed, the issue is moot.

143

treating him. On February 18, 1983, Albert served and filed written interrogatories requesting the names of all experts retained by Waelti to render opinions in the case, a summary of their testimony, and any written reports stating their findings and opinions. Waelti's attorney responded, listing the names of Drs. Dennis Adler and James Lampman, and indicating that, while both had examined and treated Waelti, neither had made any report regarding the lawsuit. He later added a third dentist, Dr. Robert Brooks, to this list.

Seven months later, on March 15, 1984, Waelti testified at a deposition that neither Adler nor Lampman had ever stated that Albert committed any dental malpractice and that Brooks never commented on the cause of Waelti's claimed injuries. On April 9, 1984, a scheduling order was issued setting the case for a three-day court trial beginning October 10, 1984. All discovery was to be completed by September 20, 1984.

In July, 1984, Waelti's attorney wrote to the court, referring to a "viscious [sic], wanton and wilful 'conspiracy of Silence,'" and stating that none of the three dentists he had listed as expert witnesses would testify in support of Waelti's claim. He asserted that he nonetheless intended to secure their presence at trial by subpoena. A series of telephone calls between the court and counsel ensued, and the court eventually gave Waelti until September 5, 1984, to state whether he had located an expert witness to testify at trial. When that date passed with Waelti's counsel requesting "one last attempt" to locate such a witness, the court removed the case from the trial calendar and scheduled a hearing for September 11 to determine whether Waelti had secured an expert.

When Waelti's attorney stated at the September 11 hearing that he could not provide the name of any expert witness who would testify in Waelti's behalf, Albert moved to dismiss the counterclaim. Albert argued that dental malpractice may be established only through expert testimony and that since Waelti could offer none, he could not, as a matter of law, meet his burden of proof. Waelti opposed the motion, conceding that he would not be able to produce an expert witness at trial, but arguing that he should nonetheless be given the opportunity to subpoena Adler, Lampman and Brooks so the court could hear whatever they might have to say and decide the case accordingly. The trial court, noting Waelti's concession that he was unable to offer expert evidence in support of his counterclaim, concluded that he would be unable to prove malpractice and granted Albert's motion to dismiss.

■

Waelti does not dispute the proposition that, except for the rare case where the common knowledge of laypersons affords a basis for finding negligence, expert medical testimony is required to establish the degree of care and skill required of a physician. *Christianson v. Downs*, 90 Wis.2d 332, 338, 279 N.W.2d 918, 921 (1979). We see no distinction between physicians and dentists in this regard, and Waelti does not suggest that a different standard should apply.

■

Waelti's counterclaim alleged that, in treating him, Adler failed to exercise the "high degree of specialized professional skill and care and degree of knowledge ordinarily exercised or possessed by dentists engaged in a similar type of practice in the State of Wisconsin, and according to the state of knowledge and the practice of

dentistry at the time in question." Specifically, Waelti asserted that Albert was negligent in cleaning his teeth, performing a root canal procedure and removing a cap from a damaged tooth. He claimed that this negligence resulted in a variety of injuries and damage, notably a condition known as temporal mandibular joint dysfunction. Neither the degree of skill required of a dentist performing such procedures on a patient, nor the question of whether a violation of that standard caused Waelti's claimed medical condition, are within the common knowledge of laypersons. Without expert testimony, Waelti could not make a *prima facie* case for recovery, and the trial court properly applied the law in dismissing the action.

Waelti's only argument, adopted *in toto* by the dissent, is that he did everything he was required to do by sec. 804.01(2)(d)1, Stats; that is, he "identif[ied] each person whom [he] expect[ed] to call as an expert witness at trial." The fact that he has no idea what they will say, and concedes that whatever it may be, it will not support his claim that Albert was negligent, appears to be of no concern.

We disagree. The interrogatories asked Waelti to state whether he had retained any experts to render opinions with respect to the counterclaim and, if so, to disclose not only their names, but also the subject matter of their testimony, the dates on which they examined Waelti, and whether they prepared written reports of their opinions. By his responses, Waelti asserted that he had retained Adler, Lampman and Brooks to render opinions as to his treatment by Albert and that, although he received an oral report from Adler, he had not received any written reports. Then, eleven months later, Waelti's attorney acknowledged

that none of the named dentists was "willing ... to testify on my client's behalf" and ended his pretrial preparation with an indication that he would, nonetheless, subpoena them to appear at trial so the court could have the benefit of their testimony, whatever that testimony might be. Albert's counsel had two choices. He could depose each named witness, perhaps at great effort and expense, or proceed to trial uninformed, potentially jeopardizing Albert's case.

Under the circumstances, neither choice is acceptable. Wisconsin's liberal discovery procedures are analogous to those found in the Federal Rules of Civil Procedure. *State ex rel. Dudek v. Circuit Court*, 34 Wis.2d 559, 575, 150 N.W.2d 387, 396 (1967). They serve "as a device ... to narrow and clarify the basic issues between the parties, and ... [to ascertain] the facts, or information as to the existence or whereabouts of facts, relative to those issues." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947).

> [T]he ultimate objective of the adversary trial system and of pretrial discovery is identical. The ends of justice and civil peace are best served when our trial procedure results in an informed resolution of controversy. The basic objective of our trial system, then, is the ascertainment of the truth, whether by court or jury, on the basis of those factors legal and factual, best calculated to effect a decision which comports with reality. The thought, of course, is that justice can more likely be done if there is a preliminary determination of the truth of facts.
>
> A second observation is that our liberal rules of pretrial discovery ... are meant to facilitate the job of the adversary system in accomplishing its objective. Pretrial discovery is designed to formulate, define and narrow the issues to be tried, increase the

chances for settlement, and give each party opportunity to fully inform himself of the facts of the case and the evidence which may come out at trial. Thus the function of pretrial discovery is to aid, not hinder, the proper working of the adversary system. *Dudek*, 34 Wis.2d at 576, 150 N.W.2d at 397.

Those purposes surely would be thwarted if, as Waelti and the dissent suggest, all a plaintiff need do in response to a request to discover the names and opinions of expert witnesses is to list several physicians' names without having any inkling as to what their opinions might be, and, eventually, to proceed to trial on that basis.[2]

Waelti, the claimant in a $300,000 medical malpractice lawsuit that had been pending for nearly two years, informed the court on the eve of trial that he was unable to produce an expert to testify as to Albert's negligence. Waelti's representation that he would nonetheless subpoena three dentists—none of whom had offered an opinion in support of his claim—is not sufficient to take the case to trial under the circumstances of this case, and the trial court properly granted the motion to dismiss.

---

[2] It might be suggested that, faced with such a situation, the defendant's attorney should proceed to depose the named persons, and, should any such expenditures prove unnecessary, attempt to recoup them as costs at the conclusion of the trial.

First, as we have noted, one of the basic purposes of discovery is to focus and narrow the issues so as to facilitate the trial process, and proceeding to an unnecessary trial would be the antithesis of that objective. Second, we believe it makes much more sense to avoid such unnecessary expenses at the outset, rather than to commence still more court proceedings to attempt to recover them after the fact.

*By the Court.*—Judgment affirmed.

DYKMAN, J. (*dissenting*). The problem with this case is that no one was willing to spend the time or money to examine the three dentists. The procedure used was vague, with each party writing or telephoning the court to address perceived problems, rather than bringing motions. The result was the confusion that pervades the record.

The September 11 conference was held pursuant to a series of telephone calls between the court and the attorney for Waelti. There is no record of the substance of those calls. However, previous correspondence suggests that the parties and the court were attempting to deal with Waelti's problem in obtaining a medical opinion that Albert was negligent in treating Waelti. The court ultimately concluded that Waelti would not be able to meet his burden to show that Albert negligently treated him. I do not believe that this conclusion is warranted. All that Waelti said was that he was not sure whether his expert witness would testify that Albert was negligent.

Faced with this problem, the solution was not to dismiss the action or proceed to trial, the only alternatives suggested by the majority. A trial court has wide discretion in entering pretrial orders, and could have ordered Waelti to depose his experts, or provide medical reports showing Albert to be negligent. The court could have granted a motion to dismiss had Waelti failed to obey the order. Defendant could have brought a motion for summary judgment if Waelti's experts failed to support his claim.

Waelti obeyed the only scheduling order issued, and identified his expert witnesses. Dismissal is a harsh

remedy, and should be invoked as a last resort. Justice is better done by forcing a litigant with suspect claims to produce necessary evidence before trial or suffer dismissal of his or her complaint. I would reverse to permit that to be done.