Carolyn E. **MIELKE**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

No. 86–C–452.

United States District Court,
E.D. Wisconsin.

Aug. 21, 1987.

---

Daniel J. Cook, Milwaukee, Wis., for plaintiff.

Patricia J. Gorence, U.S. Atty., U.S. Courthouse by Mel S. Johnson, Asst. U.S. Atty., Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

Carolyn Mielke commenced this suit for monetary relief under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. She alleges that she suffered dental complications due to the negligence of a general dentist employed by the United States public health service. A trial to the court was held on June 25–26, 1987. Post-trial briefs were submitted, and the matter is now ready for resolution.

Based on the record and on all testimony elicited at trial, I find that Dr. Michael Lewitzke, an employee of the defendant, negligently performed an extraction of the plaintiff's second lower molar. I also conclude that such negligence resulted in extensive bone loss and that the defendant is obligated to compensate the plaintiff for resulting pain and disability in the amount of $4,000.

## BACKGROUND

Beginning in July 1980, Carolyn Mielke was treated by Dr. Lewitzke at the Milwaukee Indian Health Center, a clinic operated by the defendant. Dr. Lewitzke noted in 1980 that Ms. Mielke's general dental health included an abnormal tempromandibular joint (TMJ) and that she was a nervous patient. Also at that time, Ms. Mielke complained of pain in her second lower molar (tooth number 18). The latter complaint led to two years of fairly regular treatment and ultimate referral, in early July 1983, to an endodontist for root canal treatment. On July 8, 1983, some preliminary root canal work was performed on Ms. Mielke's aching tooth number 18, but Ms. Mielke did not complete the process. She opted instead to have the tooth extracted and contacted Dr. Lewitzke to make the necessary appointment.

On July 13, 1983, the plaintiff was accompanied to the health clinic by her sister, Alisa Thomas. There Dr. Lewitzke performed the extraction that ultimately gave rise to this suit. The procedure itself involved two stages. First, the dentist anesthetized his patient and commenced the extraction process. The mesial root of Carolyn Mielke's tooth number 18 broke off during this first extraction stage. In order to locate the fugitive root, Dr. Lewitzke obtained an x-ray of Ms. Mielke's lower left mandible. Upon reviewing the x-ray, Dr. Lewitzke recommenced the extraction procedure and made further, ultimately unsuccessful, attempts to remove the remaining root.

Ms. Mielke left the health clinic with a prescription for pain medication. She called the clinic later the same afternoon complaining of continued severe pain. Dr. Lewitzke increased her pain medication. Dr. Lewitzke also contacted Ms. Mielke by phone on the next day, and his patient reported that her condition was improved. One day later, however, Ms. Mielke telephoned the clinic complaining of severe pain again. Additional pain medications were prescribed. During the following two weeks, Ms. Mielke made two follow-up visits to the clinic and appeared to be healing normally.

However, Ms. Mielke failed to keep her third follow-up appointment scheduled for August 2, 1987, and she did not respond to the health clinic's reminder post card. Suffering from trismus, a spasm of the muscle of the jaw, and infection, Ms. Mielke sought treatment from another dentist, Dr. Mark Urban, who then practiced in the office of Fred Ballerini, D.D.S.

The plaintiff was first seen by Dr. Urban on August 10, 1983. Dr. Urban prescribed antibiotics for Ms. Mielke to rid her mouth of infection. On August 13, 1983, Ms. Mielke contacted Dr. Urban's office complaining of pain and was prescribed pain medication again. On August 15, 1983, the plaintiff made another office visit to Dr. Urban. This time he easily extracted the remaining mesial root and noted the probable existence of exfoliating bone chips in Ms. Mielke's gum. After observing Ms. Mielke's condition over the next week, Dr. Urban consulted with an oral surgeon, Dr. Scott Levin, about pain of which Ms. Mielke complained around the extraction site and radiating up towards her left ear.

Ms. Mielke first saw Dr. Levin on August 25, 1983. He removed an exfoliating bone chip on the lingual (tongue-side) surface of the extraction site; this procedure relieved some of Ms. Mielke's pain. When she returned to Dr. Levin approximately one week later, Ms. Mielke reported that her condition was improved, but that she still experienced pain around her left temple. Through the use of an arthrogram, Ms. Mielke was diagnosed as having TMJ derangement and meniscus perforation. Dr. Levin consequently surgically replaced her TMJ meniscus with a synthetic material in December 1983.

## ANALYSIS

*Law Applicable*

In malpractice actions commenced pursuant to the Federal Tort Claims Act, the controlling substantive law is the law of the state where the alleged negligence occurred. *Weise v. United States,* 724 F.2d 587, 589 (7th Cir.1984). It follows that the court must apply Wisconsin dental negligence law.

To establish dental negligence under Wisconsin law, a plaintiff has the burden to prove that a defendant has failed to use that degree of care, skill and judgment which is usually exercised in the same or similar circumstances by the average dentist. *See Albert v. Waelti,* 133 Wis.2d 142, 394 N.W.2d 752 (Ct.App.1986). *Cf. Shier v. Freedman,* 58 Wis.2d 269, 206 N.W.2d 166 (1973); *Trogun v. Fruchtman,* 58 Wis.2d 569, 207 N.W.2d 297 (1973) (same standard applied to physicians in medical malpractice cases). A bad result alone does not give rise to the presumption of negligence. *Hoven v. Kelble,* 79 Wis.2d 444, 256 N.W.2d 379 (1977). To prevail the plaintiff must satisfy the factfinder, by the greater weight of the credible evidence, that the defendant failed to conform to the relevant standard of care and that such failure caused injury to the plaintiff. *Francois v. Mokrohisky,* 67 Wis.2d 196, 202, 226 N.W.2d 470 (1975). The requisite degree of care and skill is a matter to be established through the testimony of expert witnesses. *Kuehnemann v. Boyd,* 193 Wis. 588, 214 N.W. 326 (1927); *Froh v. Milwaukee Medical Clinic, S.C.,* 85 Wis.2d 308, 270 N.W.2d 83 (Ct.App.1978). The plaintiff will be barred from recovery if her own negligence is determined to be greater than that attributed to the defendant. Wis.Stat. § 895.045.

*Liability*

■ During the trial, plaintiff's counsel highlighted three areas which he contended

establish a failure to conform to the standard of care by Dr. Lewitzke and, therefore, liability for the consequent damages: First, the plaintiff contends that the nature of the extraction itself and its immediate results establish Dr. Lewitzke's negligence. Second, Ms. Mielke's subsequent TMJ problems indicate negligence by Dr. Lewitzke. Finally, Ms. Mielke asserts that her extensive lingual plate bone loss demonstrates Dr. Lewitzke's negligence. Only the plaintiff's final theory is supported by the greater weight of the credible evidence in this case.

Ms. Mielke contends that her original extraction procedure took more than four hours and that her jaw was racked back and forth by Dr. Lewitzke in a desperate attempt fully to remove her tooth. She also claims that Dr. Lewitzke never discussed the retained root with her. This scenario is simply not credible. Ms. Mielke's estimate of the time spent in a dental chair and the alleged trauma she experienced there nearly four years prior to her testimony at the trial in this case is not entitled to great weight. Her dental history and history of pain medication usage reflect her anxiety about dental treatment. Moreover, her recollection about other significant, concurrent events is hazy. For instance, she could not recall the undisputed fact that she was taking prescription sedatives at all times relevant to this case. Nor could Ms. Mielke recall seeing an endodontist just days before the extraction procedure at issue in this case.

The only corroborating evidence of the length of the procedure is the trial testimony of the plaintiff's sister. Ms. Thomas testified that she recalls waiting for four hours for her sister on the day of the extraction. However, I am not persuaded that this four-year old recollection is entirely accurate when the only two witnesses, other than Ms. Mielke, to the extraction itself, Dr. Lewitzke and his assistant, Willa Thomas, testified that they have no recollection of an extraction of a duration as extraordinarily long as four hours and involving a torquing of the patient's jaw.

With regard to the retained root, Dr. Lewitzke's contemporaneous notes, as well as his trial testimony, indicate that he did discuss the matter with Ms. Mielke immediately after the extraction procedure and during several follow-up telephone conversations and office visits. Thus, the bulk of the credible evidence admitted during trial simply does not support the plaintiff's contentions on the circumstances of the extraction itself.

Furthermore, the greater weight of the expert testimony in this case persuades me that by leaving the root in Ms. Mielke's mandible, Dr. Lewitzke did not fail to comply with the standard of care for general dentists in like or similar circumstances. Dr. Levin, by way of his deposition, and Dr. Ballerini at the trial, both testifying as expert witnesses for the plaintiff, each opined that the breaking of a root during an extraction, particularly an extraction of a tooth that has been endodontically treated, does not suggest a failure to comply with the relevant standard of care. Dr. Phillip C. Fox, head of the clinical studies unit of the National Institute of Dental Research, testified as an expert witness for the defendant. He opined that Dr. Lewitzke's decision not to go after Ms. Mielke's broken mesial root was not a failure to conform to the standard of care; attempts to retrieve such a root risk exposure and injury to the underlying alveolar nerve. In light of the testimony of experts testifying on both sides of this case, the plaintiff has not satisfied me by the greater weight of the credible evidence that Dr. Lewitzke was negligent in failing to take steps to have the mesial root of Ms. Mielke's tooth number 18 extracted.

Further, because I am not impressed by Ms. Mielke's description of the manner in which Dr. Lewitzke removed her tooth number 18, I am not persuaded that the extraction could have caused the subsequent TMJ trouble she has endured. Drs. Ballerini and Urban testified as experts on behalf of the plaintiff that the use of excessive force during extraction could give rise to TMJ derangement. However, the condition precedent employed by these experts has not been established. Accordingly, I

am not persuaded by the opinions of Drs. Ballerini and Urban on this point.

Reviewing the remaining expert testimony with regard to the source of Ms. Mielke's TMJ problems, that of Dr. Levin for the plaintiff and Dr. Fox on behalf of the defendant, I am persuaded that the testimony of the latter is entitled to greater weight.

Dr. Levin opined that Ms. Mielke went "through a very difficult extraction procedure and more than likely has sustained a tempro-mandibular joint internal joint derangement as well as perforation of meniscus secondary to the extraction." Plaintiff's Exhibit 6 (Report of Dr. Scott N. Levin). When asked to describe the bases of this opinion, the sole basis described was the temporal relationship between Ms. Mielke's TMJ pain and the extraction. *See* Deposition of Dr. Scott N. Levin at 40. As noted, a bad result in and of itself does not give rise to an inference of negligence. Dr. Levin's opinion is based on nothing more than the coincidence in time of Ms. Mielke's extraction and a bad result.

By contrast, Dr. Fox's opinion is based on a comprehensive review of Ms. Mielke's medical and dental history together with the particular type of TMJ problem revealed by her arthrogram. For example, Dr. Fox noted that Ms. Mielke's TMJ was diagnosed as abnormal as early as 1980. Also Dr. Fox considered that Ms. Mielke was under what she admitted to be stress around the time of her serious TMJ pain in 1983; she separated from her husband and was undergoing divorce proceedings, among other things. All of the experts agreed that TMJ pain is commonly associated with stress as it manifests itself in teeth clenching and grinding. Dr. Fox opined that Ms. Mielke's TMJ injuries were so associated, and not the result of an acute event such as a difficult extraction. Further, according to Dr. Fox, the very nature of Ms. Mielke's TMJ injury, a TMJ derangement involving a perforated meniscus, supports this opinion. Dr. Fox's convincing testimony precludes a finding that the greater weight of the credible evidence in this case establishes a causal relationship between Ms. Mielke's TMJ maladies and the extraction performed by Dr. Lewitzke.

However, I am satisfied that the greater weight of he evidence does establish that Dr. Lewitzke failed to conform to the standard of care by causing Ms. Mielke to suffer extensive lingual bone loss, infection and trismus. The latter two conditions, however, were, in my opinion, in larger measure caused by Ms. Mielke's contributory negligence.

Trismus, a spasm of the muscle in the jaw, is caused by infection and trauma to the jaw. Ms. Mielke developed an infection and trismus sometime after her final visit to Dr. Lewitzke on July 25, 1983. According to Dr. Lewitzke's patient notes for that day, Ms. Mielke was "healing nicely." The plaintiff presented no evidence to dispute the content of these notes. Ms. Mielke failed to appear for a scheduled appointment on August 2, 1983. Any infection which was developing on or around that date could have been detected and treated by Dr. Lewitzke on that day. Absent any evidence by the plaintiff that her infection and trismus did not manifest itself until after August 2, 1983, I am persuaded that her failure to keep her appointment on that day was an act of negligence on the part of the plaintiff. Moreover, with respect to her infection and trismus, I conclude that Ms. Mielke's contributory negligence was greater than any arguable negligence by Dr. Lewitzke. Accordingly, Ms. Mielke is barred from any recovery for any resulting damages in this regard.

However, Ms. Mielke is not barred from recoverying damages for any injuries resulting from extensive bone loss. Dr. Ballerini and Dr. Fox both expressed opinions that extensive bone loss associated with an extraction procedure constitutes negligent dental treatment. In this case, there is substantial evidence indicating that in performing the extraction on Ms. Mielke, Dr. Lewitzke caused such bone loss. Dr. Urban averred that he had performed over three thousand extractions but had "never seen bone loss like this before or

since...." Deposition of Dr. Mark Urban at 37.

Bone loss was noted by Dr. Urban when he first saw Ms. Mielke; this condition is also reflected in x-rays of Ms. Mielke's lower left mandible taken on July 13 and August 10, 1983. Moreover, Dr. Urban detected, and Dr. Levin surgically removed, an exfoliating bone chip from the lingual side of Ms. Mielke's extraction site. Dr. Levin stated that what he removed was a splinter of Ms. Mielke's lingual plate. In light of the presence of lingual bone chips shortly after the extraction, and the x-ray documentation of Ms. Mielke's mandible shortly after the procedure, I am persuaded that Dr. Lewitzke failed to comply with the relevant standard of care by causing extensive bone loss during extraction.

The defendant contends, however, that the x-rays and expert testimony show that Ms. Mielke also suffered buccal plate (cheek-side) bone loss around her extraction site, and, therefore, the plaintiff has failed sufficiently to satisfy her burden of proof on causation of bone loss. I disagree. Although there is credible evidence to support a finding of buccal plate bone loss subsequent to Dr. Urban's treatment of the plaintiff, there is also credible evidence of lingual plate loss appearing at an earlier date. Evidence of any subsequent buccal plate loss does not negate the plaintiff's strong showing in this regard.

### Damages

Having determined that the defendant, by way of Dr. Lewitzke, failed to conform to the standard of care in performing an extraction of Carolyn Mielke's tooth number 18 and causing extensive lingual plate bone loss, I must determine to what degree the defendant is liable in damages. The plaintiff seeks an award of damages for past dental, medical, hospital and related expenses; past pain, suffering and disability, future dental, medical, hospital and related expenses, future pain, suffering and disability and loss of financial aid.

### Past Dental, Medical, Hospital and Related Expenses

The amount of past dental and medical expenses incurred by the plaintiff is not disputed. However, none of the itemized billings set forth by the plaintiff were incurred secondary to the injuries resulting from the negligence of Dr. Lewitzke. The bulk of the total $4,769.10 claimed in this regard is derived from Ms. Mielke's TMJ treatment. The remaining charges are bills from Dr. Ballerini's office for root removal and follow-up care and from Dr. David Kashnig, a neurologist. The evidence fails to connect these charges with the lingual bone loss suffered by Ms. Mielke and, therefore, Dr. Lewitzke's negligence.

### Past Pain, Suffering and Disability

The plaintiff requests the sum of $25,000 as reasonable compensation for her past pain and suffering. However, the pain for which she seeks compensation is primarily associated with her TMJ. Dr. Levin's deposition testimony provides some evidence of past pain associated with Ms. Mielke's bone loss. He testified that this chip "was either partly or completely responsible for a lot of the pain she was having in the area of the extraction." Deposition of Dr. Scott N. Levin at 24. In addition, Dr. Ballerini opined that the plaintiff's bone loss could have implications for her remaining teeth.

What dollar amount would fairly compensate Ms. Mielke for this pain and disability? The court of appeals for the seventh circuit recently expressed its approval of awards for pain and suffering, but admonished courts that the amount of such awards should be kept "within reason." *Kwasny v. United States*, 823 F.2d 194, 197–98 (7th Cir.1987). I am persuaded that an award of $4,000 is an amount within reason to compensate the plaintiff for what I have determined to be her compensable past pain and disability.

### Future Dental, Medical, Hospital and Related Expenses

The only future expenses claimed by the plaintiff are those associated with a future TMJ surgery. For the reasons articulated above, I am not persuaded that the evidence presented in this case established a sufficient connection between Dr.

Lewitzke's negligence and Ms. Mielke's TMJ problems. Accordingly, expenses associated with Ms. Mielke's TMJ treatments may not be charged to the defendant.

*Future Pain, Suffering and Disability*

■ For similar reasons I must also reject any claim for damages associated with future TMJ problems and treatment. Nor should damages for future pain associated with Ms. Mielke's lingual bone loss be awarded in this case. The only arguable evidence of a connection between chronic pain and Ms. Mielke's bone loss is testimony by Dr. Ballerini. Dr. Ballerini admitted that it is impossible to determine whether the lingual bone loss experienced by Ms. Mielke caused nerve damage and chronic pain. Nevertheless, it is his opinion that Ms. Mielke's bone loss caused exposure of the alveolar nerve and, in so doing, continued pain around the extraction site.

I am persuaded, however, by the expert testimony of Dr. Fox and Dr. Levin on this point. Dr. Fox stated first that the loss of bone was not a significant problem because both the lingual and buccal plates would be expected ultimately to resorb after an extraction. However, even if lingual bone loss was considered significant injury and did cause exposure of the alveolar nerve, Dr. Fox testified that any resulting damage to the nerve would most likely manifest itself in loss of sensation and not chronic pain. Furthermore, Dr. Levin testified that Ms. Mielke's bone loss is not the cause of her continued pain. Deposition of Dr. Scott N. Levin at 42. In light of this testimony, I am persuaded that the plaintiff has not met her burden of proof with regard to future pain and suffering damages.

*Loss of Financial Aid*

■ The plaintiff also seeks compensatory damages for the loss of financial school aid that she incurred when she withdrew from her classes at the University of Wisconsin at Milwaukee during the fall semester of 1983. I conclude that the evidence indicates only that such loss of financial aid was arguably caused by the TMJ corrective surgery which Ms. Mielke underwent in December 1983. For the reasons asserted above, this loss, sustained pursuant to Ms. Mielke's TMJ problems, cannot be charged to this defendant.

## CONCLUSION

The plaintiff has satisfied her burden of proving that Dr. Michael Lewitzke was negligent in performing an extraction that resulted in extensive lingual plate bone loss around the site of her extraction. As a result of this dental negligence, the defendant is liable in damages.

Whether and in what amount the plaintiff's counsel is entitled to attorney's fees pursuant to 28 U.S.C. § 2678 are matters that have not been raised by the parties. If the parties are unable to resolve the issue without the assistance of the court, appropriate submissions are invited. In this regard, plaintiff's counsel should serve and file an application for fees along with a supporting brief on or before September 14, 1987. Counsel for the government may then serve and file an opposing brief no later than 14 days after the date of the plaintiff's counsel's application. Upon receipt of such submissions, if any, I will consider and rule on the propriety and amount of attorney's fees in this case.

Therefore, IT IS ORDERED that the clerk of this court enter judgment in favor of the plaintiff in the amount of $4,000, plus costs, for damages incurred pursuant to her lingual plate bone loss.

IT IS ALSO ORDERED that in all other respects this action be and hereby is dismissed, with prejudice and without costs.