929 F.2d 703
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
David A. RUSSELL, Personal Representative, Estate of Shelley
A. Russell, Deceased, David A. Russel, Robin
Russell and Aaron Russell, Minors by
David A. Russell, their
Guardian,
Plaintiffs/Appellants,
v.
William P. WENDT, M.D., James H. Woods, M.D., St Joseph's
Hospital, aka Wheaton Franciscan Services, Inc.,
Good Samaritan Hospital, aka Good
Samaritan Medical Center,
Inc., Defendants/Appellees.
 No. 90-1150.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 22, 1991.*
Decided April 4, 1991.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin, No. 87 C 308, Robert W. Warren, Judge.
 E.D.Wis.
 AFFIRMED.
 Before CUDAHY, EASTERBROOK and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff David Russell appeals the district court's entry of summary judgment on behalf of the defendants in this diversity case involving claims of medical malpractice. The district court granted judgment to the defendants on the grounds that the plaintiff failed to provide a qualified expert witness to establish the standard of care for a physician in a medical malpractice case under Wisconsin law.
 
 I.
 
 2
 David filed his complaint in federal district court on March 17, 1987, alleging that the defendants had failed properly to diagnose the medical condition of, or render appropriate medical treatment to, his deceased wife, Shelley Russell. Mrs. Russell apparently suffered from Hodgkin's disease, an inflammatory condition affecting the lymph nodes, spleen, kidneys and/or liver. At a status hearing on January 12, 1988, plaintiff was ordered to reveal his expert witness by July 1, 1988. Plaintiff failed to do so, and defendants moved to compel disclosure on August 1, 1988. Plaintiff responded that he would name his expert by September 15, 1988.
 
 
 3
 On September 15, 1988, having failed to receive the name of plaintiff's expert, defendants moved for summary judgment. At some point during the next several months, however, plaintiff named Dr. James Couch as his expert. In response, defendants filed a renewed motion for summary judgment on April 10, 1989, arguing that Couch, whose medical license had been revoked in 1981 due to a drug conviction,[1] was unqualified to offer expert testimony on the events surrounding Mrs. Russell's treatment in 1984. Defendants also noted that Couch was Mrs. Russell's father. After the case was reassigned,[2] a status conference was held on June 12, 1989, and the parties were told to brief the expert witness issue. The court also told plaintiff that he had until August 1, 1989, to name an expert witness in addition to Couch. Plaintiff responded by supplying Couch's medical qualifications.
 
 
 4
 On December 21, 1989, the court entered summary judgment for defendants, citing plaintiff's inability to support his claims of negligence with expert testimony. The court noted that Couch was a family practice specialist who had no experience or expertise in diagnosing Hodgkin's disease. Even if his general experience were enough, the court noted, the fact that he had not practiced medicine in the eight years since his license was revoked was enough to disqualify him from providing the required testimony.
 
 II.
 
 5
 Although the facts in some medical malpractice cases are such that the common knowledge of laypersons provides a basis for a finding of negligence, normally "expert medical testimony is required [under Wisconsin law] to establish the degree of care and skill required of a physician." Albert v. Waelti, 133 Wis.2d 142, 394 N.W.2d 752, 754 (Wis.App.1986); see also Christianson v. Downs, 90 Wis.2d 332, 279 N.W.2d 918 (1979) (although measles is within the common experience, expert testimony is necessary to establish proper standard of diagnosis and treatment). Failure to provide a qualified expert witness to testify on this essential element of the cause of action is grounds for dismissal. Albert, 394 N.W.2d at 754; Lech v. St. Luke's Samaritan Hospital, No. 90-1970, slip op. at 5 (Jan. 7, 1991) (when court barred plaintiff's only expert, she was left without a case and dismissal was proper).
 
 
 6
 The admission of expert testimony is largely a matter within the discretion of the trial court. Simplex, Inc. v. Diversified Energy Sys., Inc., 847 F.2d 1290, 1292 (7th Cir.1988). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." Carroll v. Otis Elevator Co., 896 F.2d 210, 212 (7th Cir.1990). Plaintiff does not dispute that the district court was required to employ these criteria in analyzing the question whether Couch was qualified to testify. Instead, he seems first to argue that the district court moved too quickly in dismissing his case. It is clear, however, that plaintiff was the recipient of a number of extensions of time within which to name his medical expert, and the district court's actions in this case can hardly be characterized as hasty. Plaintiff knew of the necessity of supplying an expert and was specifically granted a final period of time within which to name an expert in addition to Couch. He failed to do so and thus his case was dismissed. As we recently concluded in a similar case, see Lech, No. 90-1970, slip op. at 5, plaintiff has only himself to blame.
 
 
 7
 Plaintiff also claims that the court erred in requiring him to produce an expert witness on the topic of Hodgkin's disease since he claims that Shelley died of liver failure. The fact remains, however, that even under this "new" theory, Wisconsin case law requires plaintiff to produce an expert witness to establish the standard of care of the physician. Christianson, 279 N.W.2d at 921. Liver function and treatment is clearly not within the common knowledge of laypersons. Id. (listing removal of wrong limb or leaving sponge in surgical incision as typical negligent acts within common knowledge). Thus, even under this characterization of the negligence claim, plaintiff was still required to produce an expert, and his failure to do so resulted in dismissal of the case.
 
 
 8
 Finally, plaintiff argues that the court should have held a hearing on Couch's qualifications since there was a genuine issue of material fact regarding whether he was qualified to produce expert testimony. First, plaintiff fails to identify what genuine issues were in dispute. He does not contest the fact that Couch had no expertise in surgery, oncology or internal medicine, or that Couch had not even practiced family medicine for eight years due to the revocation of his license. In addition, a litigant is typically entitled to an evidentiary hearing only after demonstrating the existence of disputed issues of material fact, not before doing so. See, e.g., Altenheim German Home v. Turnock, 902 F.2d 582, 585 (7th Cir.1990); Matter of Grand Jury Proceedings Empaneled May 1988, 894 F.2d 881, 882-83 (7th Cir.1989).
 
 III.
 
 9
 Plaintiff fails to demonstrate that summary judgment was not warranted on the grounds that he was unable to meet his prima facie tort case under state law. The decision of the district court in this case is, therefore,
 
 
 10
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Couch pleaded guilty in federal court to two drug violations--unlawfully dispensing a controlled substance (Quaalude) and using a fictitious DEA registration number in the course of dispensing a controlled substance (Ritalin)
 
 
 [2]
 Judge Stadtmueller was originally assigned to the case, but he recused himself when Dr. Couch became involved in the case. During his tenure in the U.S. Attorney's Office, Judge Stadtmueller came into contact with one or more cases involving Dr. Couch