TRANSPORTATION INSURANCE COMPANY, INC., Donald Kind and Fran Kind, Plaintiffs-Respondents,

v.

HUNZINGER CONSTRUCTION COMPANY, a domestic corporation, the Aetna Casualty & Surety Company, Vigilant Insurance Company, Cesarz Company, Inc., and ABC Insurance Company, Defendants-Appellants,

v.

SCHROEDER & HOLT ARCHITECTS, LTD., a domestic corporation, and Howard Schroeder, individually, Defendants-Respondents,

IGLINSKI, INC., and West Bend Mutual Insurance Company, Defendants.

Court of Appeals

No. 92–2349. Submitted on briefs August 10, 1993.—Decided September 14, 1993.

(Also reported in 507 N.W.2d 136.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Stuart F. Roitburd* of *Law Offices of John J. Spindler*, of Brookfield.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *David M. Quale* and *Jeralyn B. Wendelberger* of *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.*, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *Victor C. Harding* of *Warshafsky, Rotter, Tarnoff, Gesler, Reinhardt & Bloch, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

FINE, J. This is an appeal from the trial court's grant of summary judgment dismissing cross-claims against an architectural firm and one of its employees. We affirm.

## I.

Donald Kind brought this action to recover for injuries he received while working at the Northridge Plaza Shopping Center in April of 1990. According to his second amended complaint, he "was removing cement plaster soffit from the canopy of the shopping

center when the suspension system for the soffit suddenly and catastrophically failed." The second amended complaint alleged that the suspension system's failure was caused, *inter alia*, by the negligence of the shopping center's architects, Howard Schroeder and Schroeder & Holt Architects, Ltd., a successor corporation to Rasche, Schroeder, Holt & Associates, Ltd., the firm that worked on the initial design and construction of the building in 1974, and Hunzinger Construction Company, the project's general contractor.[1]

The architects were alleged to be negligent for failing to adequately design the suspension system and supervise its construction both in 1974 and in 1978 when, according to the second amended complaint, there was "additional construction" at Northridge Plaza. Additionally, the second amended complaint alleged that the architects were negligent in failing to "inspect or detect the inadequacy of the suspension system" in 1978. The second amended complaint also alleged that Hunzinger, the general contractor, was negligent for not installing an adequate suspension system in 1974, for not adequately inspecting the suspension system in 1978, and for not adequately installing a suspension system during the 1978 construction. Hunzinger and the subcontractors cross-claimed against Schroeder and Schroeder & Holt "for contribution and/or indemnification" in the event

---

[1] The second amended complaint alleged that Schroeder & Holt was incorporated in 1977, and was the successor to Rasche, Schroeder, Holt & Associates, which was "administratively dissolved" in June of 1988. The second amended complaint also asserted claims against one of Hunzinger's subcontractors and a subcontractor of the subcontractor.

Hunzinger and the subcontractors were found liable to Kind.

Schroeder and Schroeder & Holt filed a motion for summary judgment seeking, as phrased in the motion, judgment in their favor "and against all other parties." In support of the motion, Schroeder submitted affidavits making the following averments:

- He was president of Schroeder & Holt.
- Kind's accident "occurred on a part of the Northridge Plaza Shopping Center canopy that was originally constructed in 1974, for which [Schroeder] was the responsible architect."
- He was also the responsible architect for the 1978 addition to the Northridge Plaza Shopping Center but that the addition "was not part of the canopy on which [Kind]'s accident occurred."[2]
- At the time of the 1978 construction, he "had no need to inspect the suspension system of the canopy ceiling that was constructed in 1974," and had not been "informed of any problems with the canopy ceiling and had no other reason to foresee that there was any problem whatsoever with the suspension system."
- That although the specifications for the 1974 construction omitted "certain details regarding how the soffit should be suspended," it "is customary and ordinary to omit certain details because it is within the common knowledge of the contractor to know how to suspend a soffit ceiling" of the

---

[2] He testified at deposition that he was an employee of Schroeder & Holt at this time.

type used in the Northridge Plaza Shopping Center.

- "It is ordinary and customary in the architectural profession to omit certain details from specifications, designs and drawings, when it is understood that the omitted information is within the common knowledge of the general and/or subcontractors. If detail is omitted from an architect's specifications, designs or drawings for which the contractor needs further explanation, the contractor knows that it may question the architect when he periodically visits the job site."
- That he periodically visited the construction site in 1974 and "was available" to answer any questions that the contractor might have had concerning the suspension of the canopy ceiling.
- That as a result of his periodic visits to the job site in 1974, he was "generally aware of how the canopy ceiling was being suspended, and did not note a problem with it."
- In 1974, he worked for Rasche, Schroeder, Holt & Associates, Ltd., the directors of which agreed to stop doing business as a firm as of June 30, 1977, but to remain as a corporation "solely for the purpose of collecting receivables and paying outstanding obligations." The corporation was "involuntarily dissolved" by the Wisconsin Secretary of State on June 14, 1988.
- On July 2, 1977, Schroeder and Donald Holt formed Schroeder & Holt as a separate corporation.

The Hunzinger employee who was the project supervisor on the Northridge Plaza job testified at deposition

that he agreed with the general proposition that architects' drawings were not always as clear as he would like, and agreed that if they omitted a detail so that he was uncertain as to how something should be accomplished he "would feel that [we] should ask the architect." He also testified that how to suspend the canopy was not shown in the architect's drawings for the Northridge Plaza job, and that he never asked the architect how the soffit should be hung. In his deposition, Schroeder acknowledged that the canopy could be dangerous if it were not adequately suspended.

The trial court granted summary judgment to Schroeder and Schroeder & Holt on the design issue, noting that it was undisputed that although Schroeder's plans and specifications for the 1974 construction did not specify how the canopy soffit should be suspended, it was accepted and customary practice in the industry that "the proper method of canopy suspension" be left to the general contractor: "It is *wholly undisputed* that the custom of the industry was to leave the details of the soffit suspension to the general contractor." (Emphasis in original.)

The trial court also ruled that it believed that Schroeder, in his supervisory capacity, "retained a potential duty of reasonable care to ensure that the soffit was properly constructed and that harm was foreseeable if it was *not* properly constructed." (Emphasis in original.) Nevertheless, the trial court granted summary judgment to Schroeder and Schroeder & Holt on the supervision issue because Schroeder's work on the Northridge Plaza job in 1974 was as an employee of Rasche, Schroeder, Holt & Associates. In the trial court's view, there was "no basis in law for maintaining an action against Schroeder & Holt, or Howard Schroeder individually, for the latter's work on the soffit in

1974" because there was "no indication that Schroeder & Holt succeeded to the liabilities of the firm known as Rasche, Schroeder, Holt & Associates, Ltd."

Hunzinger and its insurance carriers, and one of the subcontractors and its insurance carrier, appeal.[3] We affirm.

## II.

1. Summary judgment is used to determine whether there are any disputed issues for trial. *U.S. Oil Co., Inc. v. Midwest Auto Care Services, Inc.*, 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Appellate courts and trial courts follow the same methodology. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). First, the pleadings are examined to determine whether they state a claim for relief. *See ibid.* If they do, and if the responsive pleadings join issue, the court must then examine the evidentiary record to determine whether there is a "genuine issue as to any material fact," and, if not, whether a party is thereby entitled to "judgment as a matter of law." Rule 802.08(2), Stats.[4]

The well-known purpose of summary judgment is "to avoid trials where there is nothing to try." *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101

---

[3] Although Kind's claims against Schroeder and Schroeder & Holt were also dismissed, he has submitted a brief on behalf of Schroeder and Schroeder & Holt.

[4] The pertinent part of Rule 802.08(2), Stats., provides:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Wis. 2d 460, 470, 304 N.W.2d 752, 757 (1981). Summary judgment is thus consistent with the underlying purpose of the rules of civil procedure "to secure the just, speedy and inexpensive determination of every action and proceeding." Rule 801.01(2), Stats. In a real sense, it is akin to the motion for dismissal at the end of a plaintiff's case-in-chief, which the trial court should grant if "there is no credible evidence" in support of the elements on which the plaintiff bears the burden of proof, Rules 805.14(1) & (3), Stats.; *see Christianson v. Downs*, 90 Wis. 2d 332, 337, 279 N.W.2d 918, 921 (1979), but comes at an earlier stage in the proceedings.

Just as a defendant moving for dismissal at the close of the plaintiff's case must demonstrate that the evidence is insufficient to sustain the plaintiff's burden on one or more elements of the plaintiff's proof, *see Christianson*, 90 Wis. 2d at 334–335, 279 N.W.2d at 919–920, a party seeking summary judgment must "establish a record sufficient to demonstrate . . . that there is no triable issue of material fact on any issue presented." *Heck & Paetow Claim Serv., Inc. v. Heck*, 93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980). The ultimate burden, however, of demonstrating that there is sufficient evidence to either continue with the trial (in the case of a motion to dismiss at the end of the plaintiff's case) or to go to trial at all (in the case of a motion for summary judgment) is on the party that has the burden of proof on the issue that is the object of the motion. Thus, *Christianson* held that a motion to dismiss was properly granted because the plaintiffs in that medical-malpractice action had failed to produce evidence to satisfy one of the elements of their required proof. 90 Wis. 2d at 337–338, 279 N.W.2d at 921. Simi-

larly, in the context of summary judgment, once the moving party demonstrates that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Rule 802.08(2), Stats., the opposing party may avoid summary judgment only by "set[ting] forth specific facts showing that there is a genuine issue for trial," Rule 802.08(3), Stats.

Often, a party moving for summary judgment is able to submit evidentiary material that specifically negates an essential aspect of the adverse party's proof. Under the rules, the adverse party must then counter with evidentiary material showing a triable issue of fact. For example, in a medical-malpractice case alleging improper diagnosis and treatment, the defending physician could seek summary judgment on the ground that she neither diagnosed nor treated the plaintiff. If the physician submitted an affidavit to that effect, and the plaintiff satisfied his burden to submit opposing evidentiary material, ultimate resolution of this material factual issue would be by trial. Other times, however, a party moving for summary judgment can only demonstrate that there are no facts of record that support an element on which the opposing party has the burden of proof, but cannot submit specific evidentiary material proving the negative. We thus agree with the United States Supreme Court, interpreting Rule 56 of the Federal Rules of Civil Procedure, which "is identical in pertinent respects" to Rule 802.08, Stats., *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 664, 476 N.W.2d 593, 603 (Ct. App. 1991), that once sufficient time for discovery has passed, it is the

burden of the party asserting a claim on which it bears the burden of proof at trial "to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment need only explain the basis for its motion and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that it believes demonstrate the absence of a genuine issue of material fact; the moving party need not support its motion with affidavits that specifically negate the opponent's claim. *Celotex*, 477 U.S. at 323.[5] With these principles in

[5] In *Fortier*, we noted that whether *Celotex* is consistent with Wisconsin summary-judgment methodology was "an open question." 164 Wis. 2d at 664, 666, 476 N.W.2d at 603–604. We now conclude that *Celotex* is consistent with Wisconsin law, which, as noted, places on the party with the burden of proof at trial the burden of showing that trial is necessary.

*Celotex* interpreted Rules 56(a), 56(b), and 56(c) of the Federal Rules of Civil Procedure. 477 U.S. at 323. Rules 56(a) and 56(b) provide, respectively, that the party asserting a claim, and the party defending a claim may move for summary judgment "with or without supporting affidavits." Rule 56(c) requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on files, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 802.08(1), Stats., is, in part, Wisconsin's equivalent to Rules 56(a) and 56(b). Although unlike its federal analogues, Rule 802.08(1) does not specifically provide that the motion may be made "with or without supporting affidavits," neither does it require that affidavits be filed. Indeed, the only express command within Rule 802.08 as to the necessity of filing evidentiary material is that once a "motion for summary judgment is made and supported as provided in this

mind, we turn to the claims of alleged architect negligence.

**** 2. "The elements in a cause of action for negligence are: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Erickson v. Prudential Ins. Co.*, 166 Wis. 2d 82, 88, 479 N.W.2d 552, 554 (Ct. App. 1991). As against Schroeder and Schroeder & Holt, Hunzinger and the subcontractor have the burden of production and proof on these elements on each of the two claims of negligence: design and supervision. Although the pleadings under consideration here—the cross-claims filed against Schroeder and Schroeder & Holt by Hunzinger and the subcontractor (and their insurance carriers)—state claims for relief and thus clear the first hurdle of the summary-judgment methodology, they are blocked by the second.

A. *Alleged negligent design.*

**** As the trial court pointed out, the evidentiary material submitted on the design issue is uncontroverted: the proper method to suspend the type of canopy at issue here is left to the contractor—it is not the responsibility of the architect. Although compliance with industry custom does not negate negligence

section," the party *opposing* the motion "may not rest upon the mere allegations or denials of the pleadings" but must respond "by affidavits or as otherwise provided in this section" and "set forth specific facts showing that there is a genuine issue for trial." Rule 802.08(3).

as a matter of law, *see Schmorrow v. Sentry Ins. Co.*, 138 Wis. 2d 31, 39, 405 N.W.2d 672, 676 (Ct. App. 1987), no party has submitted any evidentiary material that raises a genuine issue of fact concerning whether Schroeder's failure to specify the method of suspension violated the standard of care applicable to architectural design. *See Vonasek v. Hirsch and Stevens, Inc.*, 65 Wis. 2d 1, 9, 221 N.W.2d 815, 819 (1974) (architect's duty not violated when fabrication-methodology well known in the industry). Thus, there is "no genuine issue of material fact" as to whether that standard of care was breached by Schroeder's plans, drawings or specifications concerning the canopy and the method of its suspension, and Schroeder and Schroeder & Holt were entitled to judgment as a matter of law. Accordingly, summary judgment on the design issue was required.

B. *Alleged negligent supervision.*

As noted, the trial court concluded that it could not grant summary judgment to Schroeder and Schroeder & Holt on the supervision issue because, in the words of its written decision, the architects had "a potential duty of reasonable care to ensure that the soffit was properly constructed." The only summary-judgment material of record is, however, to the contrary.

First, it is uncontroverted that the 1978 Northridge Plaza job did not involve the canopy where Kind was injured. Second, Schroeder's averment that at the time of the 1978 construction he "had no need to inspect the suspension system of the canopy ceiling that was constructed in 1974" is not disputed.

Third, there is nothing in the summary-judgment record, either by expert testimony or otherwise, that raises any genuine issue of material fact that Schroe-

der's supervision of the construction site in 1974 was either deficient or causal of the collapse some sixteen years later. In fact, Schroeder's affidavits aver that he periodically visited the construction site in 1974, and that, even though he was available to answer any questions the contractors might have had concerning the canopy, no questions were asked of him. Additionally, although he was "generally aware of how the canopy ceiling was being suspended" as part of his supervision of the 1974 construction, he "did not note a problem with it." Furthermore, one of Schroeder's affidavits related that he had not been "informed of any problems with the canopy ceiling and had no other reason to foresee that there was any problem whatsoever with the suspension system." None of these averments have been controverted.

Hunzinger and the subcontractor have not satisfied their burden to establish that there are genuine issues of material fact as to either whether Schroeder breached an applicable standard of care or whether anything he did or failed to do was a substantial factor in causing the collapse. Accordingly, summary judgment should have been granted to Schroeder and Schroeder & Holt on the supervision issue as well.[6]

---

[6] We are affirming the trial court's grant of summary judgment on a ground different than that used by the trial court. *See State v. Patricia A.M.*, 176 Wis. 2d 542, 549, 500 N.W.2d 289, 292 (1993) (appellate court may affirm trial court on reason other than that relied upon by trial court). We thus do not consider whether the trial court was correct in holding that Schroeder and Schroeder & Holt were not amenable to suit for Schroeder's actions in 1974 when he was an employee of Rasche, Schroeder, Holt & Associates. *See Gross v. Hoffman*, 227 Wis.

*By the Court.*—Judgment affirmed.

296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).