James A. **WHITE** and Jane B. White, Plaintiffs–Appellants,

v.

**UNITED STATES of America,** Defendant–Appellee.

No. 97–3149.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1998.

Decided June 25, 1998.

---

Jonathan C. Smith (argued), Michael A. Whitcomb, Whitcomb Law Offices, Milwaukee, WI, for Plaintiffs–Appellants.

William J. Lipscomb (argued), Penelope C. Fleming, Office of the United States Attorney, Rosemary Kraemer, Veterans Administration, Regional Office, Milwaukee,WI, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

James White filed suit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1) & 2675(a),[1] alleging that he had been injured through the negligence of Dr. Mioara Kohanyi during his treatment at the Zablocki Veterans' Administration Medical Center ("VA Medical Center") in Milwaukee, Wisconsin. Jane White, James' wife, also brought a claim in the action, alleging that she had sustained loss of society and companionship due to her husband's injury. Following a bench trial, the district court determined that Dr. Kohanyi was not negligent and accordingly entered judgment in favor of the United States. The Whites now appeal. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

James White is a decorated Vietnam veteran. Beginning in 1985, he sought treatment at the VA Medical Center for various persistent physiological and psychological problems. He was diagnosed as suffering from post traumatic stress disorder and was treated from 1986 to 1992 predominantly on an outpatient basis[2] for depression, anxiety, panic attacks, and marital and family problems. His treatment consisted of therapy and medication, including administration of the tricyclic drugs Amitriptyline, Imipramine and Desipramine.[3]

In August 1992, Mr. White advised his psychiatrist, Dr. Lilia Abad, that he was continuing to feel depressed and that he had been experiencing panic attacks and violent outbursts. In particular, Mr. White was concerned about an altercation he had with his wife in July in which he had grabbed her arms with excessive force and bruised her. Mr. White asked whether he should have a change in medication, but Dr. Abad decided that she would not prescribe new or additional medication unless Mr. White was admitted to the hospital for observation and evaluation. Accordingly, Mr. White was admitted to the VA Medical Center on August 3, 1992.

Once admitted, Dr. Mioara Kohanyi evaluated Mr. White and discussed his difficulties with him. Mr. White explained that he was depressed and irritable and that he had been experiencing increased incidents of flashbacks. He also expressed his concern that he had physically mistreated his wife, which he had not done previously. Based on her consultation with Mr. White and the various

---

1. Section 2675(a) requires that a negligence claim against the United States must be presented to the appropriate federal agency before it may be brought in federal court. That requirement was satisfied here; the Department of Veterans Affairs denied the Whites' claim in this case on December 20, 1994.

2. Mr. White was hospitalized for approximately 10 days in 1986.

3. The evidence at trial with regard to Mr. White's use of these drugs was in conflict. He claims

that he took them for only a short time and that he discontinued their use because he suffered adverse reactions to them, including dizziness, tongue swelling and numbness in his hands. However, the medical records do not indicate that Mr. White suffered an allergic reaction to these drugs; moreover, the district court found only that Mr. White suffered a sedating effect from the drugs. There was expert testimony at trial that a sedating effect does not constitute an allergic reaction to a drug.

symptoms he reported, Dr. Kohanyi prescribed Tegretol, a tricyclic drug, for mood and impulse control.

On August 6, 1992, the day Mr. White began taking Tegretol, Dr. Kohanyi met with Mr. White and several members of his family to discuss Mr. White's progress and treatment. At that meeting, Mrs. White expressed concern about the use of Tegretol to treat Mr. White. She was concerned because Mr. White had a history of intolerance for certain drugs, including adverse reactions to tricyclic drugs, which she attributed in part to Mr. White's contraction of hepatitis in 1965. According to the Whites, Dr. Kohanyi dismissed these concerns by saying that she was the doctor and that Tegretol was an appropriate drug in this situation. The Whites also maintain that Dr. Kohanyi did not inform them of the side effects of Tegretol, or how to identify whether Mr. White was suffering an adverse reaction from it.

There was conflicting evidence at trial regarding Mr. White's health over the ten-day period, from August 7 until August 17, after he began taking Tegretol. Mr. White went home for the weekend of August 7–9, 1992. He testified that he felt dizzy while taking the Tegretol as prescribed. He also experienced pain in his shoulders and he had an upset stomach. However, the medical reports indicate only that, upon his return to the hospital on August 10, he had some stomach distress but had not vomited or lost his appetite. On August 11 and 12, Mr. White continued to complain of dizziness. Dr. Kohanyi therefore reduced the dosage of Tegretol from 400 milligrams to 300 milligrams daily. According to the medical reports, by August 14, he reportedly felt less dizzy overall and he went home for the weekend. However, Mr. White claims that his dizziness persisted and that he experienced other problems such as difficulty doing crossword puzzles. Mr. White testified that, over that weekend, his symptoms of dizziness, upset stomach and pains in his chest and arms persisted. However, the medical record reflects that, upon his return to the hospital, he was suffering no side effects and he was approved for discharge from the hospital on August 17, 1992.

Mr. White was to continue taking the Tegretol after his release and was scheduled for weekly tests to monitor the Tegretol level in his blood. Mr. White testified that, upon his return home, he continued to feel depressed and upset. Moreover, he testified that he experienced cramping in his legs and hallucinations. He ceased taking the Tegretol on August 22, 1992, and he experienced severe leg and back pain the next day. On August 24, 1992, Mr. White's condition had not improved, and he sought emergency room treatment. He reported that he was having a reaction to the Tegretol. The emergency room physician told Mr. White to cease taking Tegretol and to see his psychiatrist, Dr. Abad, the next day. Although Dr. Kohanyi believed that the Tegretol treatment should be continued, Dr. Abad apparently concluded, after consulting a Physician's Desk Reference book regarding Tegretol, that Mr. White should not continue to take it.

Mr. White testified at trial that he has suffered permanent injuries as a result of his use of Tegretol. He is reportedly unable to perform physical activities; Mrs. White also testified that he becomes confused and that he has a diminished short-term memory capacity.

Various experts testified at trial with regard to the appropriateness of Tegretol as a treatment in this situation and also with respect to whether Mr. White's condition was caused by his treatment with that drug. The government's experts testified that the drug was an appropriate treatment under the circumstances. Moreover, one expert testified that, even if Mr. White did suffer permanent injury from Tegretol, his reaction was idiosyncratic and, because it was not reasonably anticipated, Dr. Kohanyi was not negligent in prescribing the drug. Mr. White's experts were of the opinion that Dr. Kohanyi was negligent in prescribing the Tegretol, but they were not absolutely certain that Mr. White suffered permanent injury as a result of that treatment.

## B. Holding of the District Court

Prior to trial, the government moved to exclude certain evidence regarding Dr. Kohanyi's credentials. Mr. White had gathered

evidence regarding her credentials which, he believed, showed that she had misrepresented her academic background and that she was not properly licensed in the State of Wisconsin. The district court granted the government's motion to exclude the credential evidence on the grounds that its probative value was outweighed by the amount of time that it would take up at trial and that Mr. White proposed to offer the evidence through an expert who had not been identified in a timely manner in accordance with the pretrial order.

Following the bench trial, the district court concluded that Mr. White had not established that Dr. Kohanyi had breached the duty of care owed him by prescribing Tegretol for him. The court found that, although Mr. White may have suffered an idiosyncratic reaction from the drug, Dr. Kohanyi could not have predicted that reaction. Moreover, the court found that the credible expert evidence indicated that Tegretol was a reasonable prescription for someone in Mr. White's condition. Accordingly, judgment was entered in favor of the United States.

## II

## DISCUSSION

The Whites raise two issues on appeal. First, they argue that the district court abused its discretion in excluding the evidence regarding Dr. Kohanyi's credentials and that this error requires a new trial. Second, they argue that the district court erred in concluding that Dr. Kohanyi did not breach the relevant duty of care. They submit that it was a breach of duty to prescribe Tegretol for Mr. White in the first place and it was also a breach of duty to fail to terminate the Tegretol prescription upon Mr. White's reported reaction to the drug. We shall discuss each of these contentions in turn.

## A.

██ Mr. White contends that the court abused its discretion in refusing to admit at trial the evidence regarding Dr. Kohanyi's credentials. We review a district court's in limine decision to exclude evidence for abuse of discretion. *See Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 852 (7th Cir. 1998); *see also Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1292 (7th Cir.1988) ("The decision whether to admit evidence is a matter peculiarly within the competence of the trial court and will not be reversed absent a clear abuse of discretion." (internal quotation omitted)). We have explained previously that, in cases in which the district court has excluded evidence on Rule 403 grounds, the party seeking to overturn that determination bears a heavy burden. *See Vance v. Peters*, 97 F.3d 987, 995 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997). The district court, because it " 'saw and heard the evidence firsthand,' " is generally in the best position to " 'balance probity and prejudice.' " *Id.* (quoting *United States v. Thomas*, 86 F.3d 647, 652 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 392, 136 L.Ed.2d 307 (1996)).

Mr. White compiled a significant amount of evidence regarding Dr. Kohanyi's credentials. He employed the services of a credentials expert named James Frey to review Dr. Kohanyi's deposition testimony and the documents that she provided regarding her degrees and licenses. Frey reviewed these documents and concluded, among other things, that Dr. Kohanyi could not have obtained certain of the degrees that she claimed she had. One of these conclusions was based on a discrepancy in the reported requirements for a given degree (6 years of study) and the fact that Dr. Kohanyi stated in her deposition that she had attended the pertinent institution for only 4 years. *See* R.73, Tab 9 at 1. Similarly, Frey concluded that Dr. Kohanyi lacked the prerequisites for admission to a school she had indicated in her deposition that she had attended; as a result, he apparently deduced that she could not have attended that school. *See id.* at 4. In addition to the evidence with respect to Dr. Kohanyi's degrees, Mr. White leveled the serious accusation against Dr. Kohanyi that she had "lied on her application to practice medicine in Wisconsin" in that she stated on the application that she had obtained a de-

gree from a school that she had not actually attended. R.71 at 1.[4]

Mr. White sought to introduce this credential evidence at trial in an effort to demonstrate that Dr. Kohanyi was not a properly licensed physician. He argues that this evidence would have had an impact on the negligence analysis and seriously would have undermined Dr. Kohanyi's credibility. Her credibility was important to the case, Mr. White submits, because of the conflicting evidence at trial regarding what was said at certain meetings between the Whites and Dr. Kohanyi.

The district court concluded, for several reasons, that it would not admit the credential evidence. It determined that the probative value of the credential evidence was outweighed by the prejudice and delay which would have resulted from the testimony. The court found that the probative value of the evidence was slight because there was no direct evidence of fraud or dishonesty but only the second-hand conclusions of an expert that were based on incomplete information.[5] The court also viewed the issue of Dr. Kohanyi's credentials as collateral because it had no direct bearing on the standard of care at issue or whether Dr. Kohanyi breached that standard by prescribing Tegretol. Finally, the court noted that the Whites had failed to bring the credentials expert or his report to the court's or the opposition's attention in a timely manner, in violation of the pretrial order.

We cannot say that the district court abused its discretion in this instance. The district court was not unreasonable in concluding, in accordance with Rule 403 of the Federal Rules of Evidence, that the probative value of the credential evidence was outweighed by the delay it would have caused. Although some jurists may have given the evidence slightly more probative weight than did the district court because the evidence might have had some bearing on Dr. Kohanyi's credibility as a witness,[6] we do not believe that the district court's estimation of the importance of the evidence can be characterized as beyond the range of options from which a reasonable jurist might be expected to choose. We cannot say that the court was incorrect in viewing the probative value of this evidence as outweighed by the waste of time it would have caused. The issue of Dr. Kohanyi's credentials had the clear potential to develop into a trial within a trial. The witness list in the Whites' pretrial order included 8 witnesses, in addition to James Frey, that potentially would have testified regarding credentials matters. Moreover, the Whites had requested an adjournment of the trial in order to compile additional evidence on the matter. Based on the record before us, we cannot say that this issue was of such importance or the evidence so probative that the district court can be said to have abused its discretion in excluding it.

■ Moreover, the district court was also justified in excluding the evidence because it was not brought to the attention of the court or opposing counsel in a timely manner. The district court's pretrial scheduling order provided that the Whites were "to disclose supplemental expert witnesses" by April 15, 1996. R.30. The record reveals that the

---

4. In reviewing the documents on which this assertion is based, we note that the Wisconsin Division of Health Professions and Services Licensing attributed the problem to a computer error and did not indicate in any way that Dr. Kohanyi was suspected of misrepresenting her credentials.

5. The Whites contend that the information was incomplete because Dr. Kohanyi did not supply all of the information that they requested. We note that Dr. Kohanyi did supply several documents regarding her credentials. However, even if she did fail to supply the credentials needed, the plaintiffs' recourse for discovery violations is to move the district court to compel the delin-

quent party to comply with discovery. See Fed. R.Civ.P. 37(a). It does not appear that the Whites availed themselves of the available recourse; consequently, we shall not now hear complaints regarding the opposing side's failure to comply with discovery.

6. We note, however, that in its final ruling, the court actually did take into account the possibility that the credentials issue may have had some bearing on Dr. Kohanyi's testimony. The court made the explicit finding that the documentary and testimonial evidence was sufficient, barring Dr. Kohanyi's testimony, to conclude that no breach of the appropriate standard of care had been established. See R.95 at 73.

Whites did not begin investigating Dr. Kohanyi's credentials until sometime after Dr. Kohanyi's deposition in September 1996. The Whites' motion to prohibit Dr. Kohanyi from testifying at trial on the basis of the credential evidence, which was to be introduced by proposed expert James Frey, was not filed until May 20, 1997. We have held previously that failure to disclose expert witnesses in compliance with pretrial orders is sufficient cause for excluding the witness. *See Simplex, Inc. v. Diversified Energy Sys., Inc.,* 847 F.2d 1290, 1292 (7th Cir.1988) (affirming trial court's decision not to permit witnesses to provide expert testimony because they had not been identified as experts in compliance with the pretrial order); *see also Miksis v. Howard,* 106 F.3d 754, 760 (7th Cir.1997) (upholding decision to strike expert witnesses for failure to disclose expert witnesses in accordance with Rule 26(a)(2) of the Federal Rules of Civil Procedure). The district court was justified in this case in holding that the credential expert James Frey was brought to its attention well beyond the applicable time period.

**B.**

Mr. and Mrs. White also take issue with the district court's decision on the merits of the case: that Dr. Kohanyi was not negligent in prescribing Tegretol. Specifically, the Whites contend that the court erred in concluding that Dr. Kohanyi had not breached the standard of care by prescribing Tegretol in light of Mr. White's history of adverse reactions to tricyclic drugs. We shall overturn the district court's decision on the merits of the case only if it cannot be supported by the evidence. *See Keller v. United States,* 58 F.3d 1194, 1199 (7th Cir.1995).

Under the FTCA, the governing law for liability is that "of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Because the alleged negligent acts at issue here occurred in Wisconsin, that state's law provides the substantive elements of the negligence claim. In Wisconsin, a plaintiff must establish four elements to succeed in a negligence action: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) actual loss or damages resulting from the injury. *See Rockweit v. Senecal,* 197 Wis.2d 409, 541 N.W.2d 742, 747 (1995). The plaintiff bears the burdens of production and proof on each of these elements. *See Transportation Ins. Co. v. Hunzinger Constr. Co.,* 179 Wis.2d 281, 507 N.W.2d 136, 140 (1993).

Mr. White invites us to review the expert testimony of Dr. Francois Saculla, which indicated that Dr. Kohanyi should not have prescribed Tegretol in light of the history of adverse reactions. Dr. Saculla concluded that, even if the Whites had not volunteered information about Mr. White's difficulties with certain medications, Dr. Kohanyi should have been aware of Mr. White's history of adverse reactions to medications because she was required to conduct a complete review of Mr. White's medical history. Mr. White also points to the testimony of other witnesses which he claims supports his view.

There was some expert testimony that favored Mr. White's perspective of the case; there was also ample evidence upon which the district court was entitled to rely that did not comport with Mr. White's view. For example, Dr. Geoff Wandry, a psychiatrist who treated Mr. White from 1993 to the time of trial, testified that he did not see any evidence of an allergic reaction to tricyclic medications in Mr. White. Instead, he noted that Mr. White may have suffered the adverse reaction of over-sedation from previous use of tricyclics. However, in his opinion, such a history did not indicate that Tegretol was inappropriate for use in treating Mr. White. This view was corroborated by Dr. Lucas Van Orden, who testified that even an adverse reaction of over-sedation to a tricyclic in the past would not necessarily be a contraindication for the prescription of Tegretol. There also was considerable expert evidence that Tegretol is widely used to treat post traumatic stress disorder and that it was an appropriate treatment in Mr. White's case.

In essence, Mr. White has asked us to do little more than reweigh the evidence. The statements by this court are legion that we shall not invade the province of the dis-

trict court in that manner. *See, e.g., Petrilli v. Drechsel,* 94 F.3d 325, 330 (7th Cir.1996). It was for the district court to hear testimony, to weigh the evidence and to make credibility determinations. *See Keller,* 58 F.3d at 1199. After the court did so in this case,[7] it concluded that Dr. Kohanyi was not negligent in prescribing Tegretol for Mr. White. We conclude that the court's determination is supported by the evidence.

### Conclusion

The district court did not abuse its discretion in refusing to admit the evidence regarding Dr. Kohanyi's credentials. Furthermore, its determination that Dr. Kohanyi was not negligent in treating Mr. White is supported by the evidence. Consequently, the judgment of the court is affirmed.

AFFIRMED.

---

7. In fact, the court specifically found the testimony of Dr. Saculla, the evidence upon which the

Whites primarily rely for reversal on this issue, not to be credible.