Reyes CASTILLO, Plaintiff–Appellant,

v.

UNITED STATES of America and James Reed, Defendants–Appellees.

No. 02–1117.

United States Court of Appeals, Seventh Circuit.

Submitted July 11, 2002.*

Decided July 23, 2002.

---

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, this appeal is submitted on the briefs and the record. *See* Federal Rule of Appellate Procedure 34(a)(2).

Before EASTERBROOK, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

### ORDER

Reyes Castillo, an inmate at the Federal Correctional Institute in Oxford, Wisconsin, brought this pro se action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80, claiming that prison medical personnel mistreated his injured right eye. The district court entered summary judgment in favor of the defendants. We affirm in part, and vacate and remand in part.

Castillo lost sight in his right eye at the age of nine as a result of a shotgun accident. Years later he accidentally exposed the same eye to chemicals while working on a farm, causing pain and seepage from the eye. Soon thereafter in December 1997, Castillo saw ophthalmologist David Reifler, who recommended removing the eye. Before Castillo could have the eye removed, however, he was arrested for (and eventually convicted of) being present in the United States without permission, *see* 8 U.S.C. § 1326(b)(2).

Castillo arrived at the Oxford facility in December 1998 and promptly told the medical staff that he needed to have his right eye removed. In March 1999 an optometrist diagnosed Castillo with an infected right eye and prescribed reading glasses. In April 1999 another optometrist ordered an ophthalmological consultation to evaluate the appropriateness of removing the eye. Five · months later ophthalmologist Ada Hall examined Castillo and prescribed eye drops to combat the discomfort in the eye. Dr. Hall acknowledged removal as a possibility, but concluded that such a course was not yet necessary.

Over the next few weeks, Castillo was frequently given ibuprofen for headaches and eye pain. In November 1999 Dr. James Reed, the prison's clinical director, diagnosed Castillo with inflammation in both eyes and prescribed antibiotic eye drops. Dr. Reed examined Castillo again in December after Castillo complained of pain and discharge from the right eye. Dr. Reed found no discharge and again wrote Castillo a prescription for antibiotic eye drops.

Over the next six months Castillo complained of headaches and various difficulties with his right eye, including pain, infection, and discharge. Though he repeatedly reminded medical staff that Dr. Reifler had recommended removing the eye, prison physicians continued to treat him with antibiotic eye drops.

In June 2000 Castillo filed an administrative complaint with the Bureau of Prisons ("BOP") contending that his doctors were not providing adequate medical care. The BOP denied his claim.

In August 2000 consulting ophthalmologist Hehryar Sadeghi found that Castillo's right eye duct was partially obstructed and prescribed antibiotic eye drops. That same month Castillo was given eye drops with a label mistakenly instructing use for

the *left eye*. He put the eye drops in the left eye and subsequently experienced pain and irritation in that eye.

In October 2000 Dr. Sadeghi noted that Castillo's condition had improved. Because Castillo still complained of pain, however, Dr. Sadeghi recommended alcohol injections to anesthetize his optic nerve as a precursor to having the eye removed. Castillo's pain persisted through the end of the year. In January 2001 Castillo had an appointment with Dr. Sadeghi to receive the alcohol injection, but Dr. Sadeghi did not have the required instruments and postponed the procedure; Castillo received the injections in March.

On May 8, 2001, Castillo filed suit in federal district court alleging that Dr. Reed was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, and also medical malpractice against the United States under the FTCA. Castillo claimed that the defendants misdiagnosed his eye ailments and should have removed the eye. Castillo, a Mexican national who speaks little English, was assisted by another inmate in filing his 131–paragraph complaint. In September 2001 the district court denied his request to "appoint" counsel, concluding that the case was "factually and legally straightforward" and that Castillo was "capable of representing himself." After the defendants moved for summary judgment, Castillo responded with his own declaration and that of Dr. Reifler. In November 2001 the court entered summary judgment in favor of the defendants, concluding that Dr. Reed did not act with deliberate indifference toward his ailments, and that Castillo failed to present sufficient medical evidence establishing medical negligence.

■ On appeal Castillo first argues that the district court erred in denying his request to "appoint" counsel. But courts do not have the authority to "appoint counsel"

in FTCA or civil rights actions; they can only ask members of their bar to *assist* a litigant. *See DiAngelo v. Ill. Dep't of Public Aid*, 891 F.2d 1260, 1262 (7th Cir.1989). "Most indigent parties in civil cases must fend for themselves here, attempting to persuade lawyers to take their cases and representing themselves if members of the bar think their claims weak." *Id.* Here, the court did not abuse its discretion by failing to recruit counsel to represent Castillo. The pleadings and filings submitted throughout the case by Castillo (no doubt assisted by a legally experienced inmate) were well-written and coherent; there is no suggestion in the record that he was not competent to represent himself. *See Hudson v. McHugh*, 148 F.3d 859, 862 n. 1 (7th Cir.1998) (denial of request for counsel not an abuse of discretion where plaintiff appeared to be as competent as any average pro se litigant).

■ Castillo next contends that he created a triable issue of fact regarding his Eighth Amendment claim against Dr. Reed. To preclude summary judgment on this claim, Castillo must set forth evidence that Dr. Reed acted with deliberate indifference to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Deliberate indifference" entails more than mere negligence, but instead requires a prison official to knowingly disregard an excessive risk to the prisoner's health. *Id.* at 837; *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir.2001). Courts must examine the inmate's care in its totality to determine whether a prison official acted with deliberate indifference. *Dunigan v. Winnebago County*, 165 F.3d 587, 591 (7th Cir.1999).

We agree with the district court that Dr. Reed was entitled to summary judgment on this claim. Although Castillo's damaged right eye is a serious medical condi-

tion, he failed to demonstrate a genuine issue of material fact regarding Dr. Reed's treatment. Castillo presented no evidence that Dr. Reed ignored or refused to treat his symptoms; indeed, the medical records reveal that Dr. Reed repeatedly provided him with eye drops and pain medication. Castillo complains that Dr. Reed did not act quickly enough in arranging consultations and scheduling him for appointments, but he did not present any evidence that the timing of his treatment adversely affected his health. And although Castillo contends that Dr. Reed's failure to remove his eye harmed him, his mere disagreement with Dr. Reed's medical judgment cannot sustain a claim of deliberate indifference. See *Estelle v. Gamble,* 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Snipes v. DeTella,* 95 F.3d 586, 591 (7th Cir.1996). Because Castillo did not present evidence that Dr. Reed's treatment reflected a conscious disregard to his well being, the court appropriately entered summary judgment in favor of Dr. Reed.

Castillo next challenges the district court's entry of summary judgment on his malpractice claim, which is governed by Wisconsin law. 28 U.S.C. § 1346(b); *White v. United States,* 148 F.3d 787, 793 (7th Cir.1998). Castillo must establish four elements to succeed in a medical negligence action: (1) a duty of care; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) actual loss or damages resulting from the injury. *White,* 148 F.3d at 793; *Rockweit v. Senecal,* 197 Wis.2d 409, 541 N.W.2d 742, 747 (1995). Wisconsin law requires that Castillo use expert testimony to demonstrate that prison medical personnel acted negligently in treating his eye. See *Lech v. St. Luke's Samaritan Hosp.,* 921 F.2d 714, 716 (7th Cir.1991); *Christianson v. Downs,* 90 Wis.2d 332, 279 N.W.2d 918, 921 (1979). As this court recently recognized, however, an expertise requirement grounded in state law may

not contravene the Federal Rules of Evidence in a federal forum. See *Ueland v. United States,* 291 F.3d 993, 998 (7th Cir. 2002) (Illinois expertise requirement cannot flout federal evidentiary rules in FTCA claim brought in a federal forum). But here we need not resolve whether Wisconsin's expertise requirement imposes a heightened evidentiary burden on litigants inconsistent with the federal evidentiary rules; Castillo satisfied the more demanding Wisconsin standard by submitting expert testimony in the form of Dr. Reifler's declaration. And in Dr. Reifler's opinion, the defendants should have removed Castillo's eye:

8. I have been apprised [sic] of Mr. Castillo's litigation and the underlying medical problems which are his painful right eye with chronic uveitis and phthisis bulbi OD.

9. I stand by the diagnosis and recommendations I made in 1997. The eye enucleation would likely have cured the chronic pain and inflammation Mr. Castillo continued to experience in his right eye. In my opinion, from a medical standpoint the surgery should have been done. If there are resources to provide the recommended surgery, they should be given.

10. In my opinion, it has been unfortunate that Mr. Castillo continued to experience chronic pain and I hope that he will receive medical treatment that will alleviate this pain.

(R. 28.) The district court concluded that this declaration was insufficient under Wisconsin law because it does not mention the appropriate standard of care or how the defendants breached that standard of care.

We disagree. Construed in the light most favorable to Castillo, Dr. Reifler's declaration was sufficient to defeat summary judgment. Dr. Reifler opined succinctly that "from a medical standpoint the

surgery should have been done." Although it is possible to read this as a statement of only one of several options, that is not the most natural reading given Dr. Reifler's use of the word "should" (meaning not optional, *i.e.*, the standard of care to which Castillo was entitled). That Castillo's pain persisted despite the eye drops and his other treatment (mostly pain relievers) suggests at a minimum that Dr. Reifler would have seen nothing in the prison records to change his view. Consequently, because Castillo presented *some* medical evidence that the defendants acted negligently, the district court erred by entering summary judgment in favor of the defendants on this claim.

The judgment of the district court is AFFIRMED in part, and VACATED and REMANDED in part for further proceedings.