Ali Amir, Plaintiff-Appellant,

v.

Marquette University, Defendant-Respondent.

Court of Appeals

*No. 2005AP2397. Submitted on briefs August 31, 2006.
—Decided October 10, 2006.*

2006 WI App 252

(Also reported in 727 N.W.2d 63.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Peter G. Earle* of *Law Office of Peter Earle, LLC*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *E. Vanessa Jones* of *Beck, Chaet & Bamberger, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. WEDEMEYER, P.J. Ali Amir appeals from an order granting summary judgment in favor of Marquette University, dismissing his complaint alleging that he was discriminated against. Amir, a person of Iranian national origin, asserts that he was unlawfully discriminated against when he was dismissed from the Marquette University School of Dentistry for academic reasons. Amir claims the trial court erred in granting summary judgment to Marquette because genuine issues of material fact existed regarding whether he was similarly situated to a Caucasian student whose academic failures were handled differently from those of Amir. Because there are issues of disputed material fact, the trial court erred in granting summary judgment. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. Amir, who was born in Iran, began living in the United States at age ten. He became a citizen of the United States and was schooled here. Amir was granted admission to attend, and received a tuition scholarship to, the Marquette dental school for the school year commencing on August 28, 2000. Amir asserts that in November 2000, he was required to travel to the United States Embassy in Naples, Italy, in order to complete the process to enable his wife to immigrate to the United States from Iran. This caused him to be out of

Milwaukee for approximately ten days. At the conclusion of the fall 2000 semester, Amir received two "F"s" and one "D."

¶ 3. As a result of the failing grades, Amir was advised by letter dated December 22, 2000, that he was subject to dismissal and had the right to meet with the Academic Review Committee on January 4, 2001, to present his strategy for remedying the deficient grades. Amir attended the meeting and advised the committee about the disruption of his studies caused by the trip. After the meeting, the committee voted unanimously to permit Amir to repeat his first year. Amir was informed by letter dated January 12, 2001, that he would remain on academic probation for the repeated year and that any failing grade would subject him to dismissal.

¶ 4. Amir returned to the dental school in the fall of 2001, and completed his first semester with no failing grades. In the spring semester, Amir received two failing grades—one "F" and one "D." Amir also received a failing grade of "D" in the summer school session. Amir alleges that the failing grades were a result of depression and anxiety and that during the summer, he went off his depression medication.

¶ 5. In mid-August 2002, Amir received a certified letter informing him that he was being dismissed from the dental school due to the failed academic performance. Amir appealed the dismissal and, for the first time, disclosed his medical condition. The committee met on September 17, 2002, and voted to uphold Amir's dismissal. Amir then appealed that decision to the dean of the School of Dentistry, William Lobb. In an October 8, 2002 letter to the dean, Amir explained his situation and attached a letter from his treating physician. Dean Lobb decided to sustain the dismissal decision. During the appeal process, Amir continued to attend classes.

When the dismissal was final, Amir continued to attend classes even after he was asked not to. He was then asked to leave.

¶ 6. On January 28, 2004, Amir filed a complaint against Marquette alleging four causes of action: (1) violations of 42 U.S.C. § 1981 asserting that different academic standards were required of Amir (an Iranian) as compared to other dental students who were Caucasian; (2) violations of 42 U.S.C. § 2000d alleging that he was unlawfully discriminated against in a federally-assisted program; (3) breach of contract by denying him a repeated chance to remediate and dismissing him from the dental school; and (4) promissory estoppel. After discovery was completed, Marquette filed a motion seeking summary judgment on the first three causes of action.[1] The trial court granted the motion, ruling that Amir had not established a *prima facie* case of discrimination because the individual dental students identified as comparable were not similarly situated. Judgment was entered. Amir now appeals.

## DISCUSSION

¶ 7. In reviewing a grant of summary judgment, we employ that same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We first examine the pleadings and affidavits to determine whether a claim for relief has been stated. *Id.* If a claim for relief has been stated, we then determine whether any factual issues exist. *Id.* If there is no genuine issue as to any material fact, and if the moving party is entitled to judgment as a matter

---

[1] The fourth cause of action was voluntarily dismissed.

of law, we will affirm the trial court's decision granting summary judgment. *Id.* Our review is *de novo. Id.*

¶ 8. Amir contends that there is a material question of fact concerning the comparability of his situation and that of another student, Daniel Meyers, such that the matter should be remanded for trial. Amir argues that Meyers, who is white, was treated preferentially despite similar circumstances. He sets forth the facts relevant to Meyers' experience at the dental school. Meyers was admitted to the dental school to commence in the fall of 1998. Meyers successfully completed his freshman year. The next year, however, Meyers received one "F" and one "D" and one incomplete in the fall 1999 semester. On January 4, 2000, the academic dean sent Meyers a letter informing him that because of the three unacceptable grades, Meyers would be placed on academic probation and would have to remediate the unsatisfactory grades. During the spring 2000 semester, Meyers got six unsatisfactory grades— one "F," two "D's," one "U" and two incompletes. Meyers was advised that the academic committee was going to meet to discuss his situation.

¶ 9. During the summer 2000 session, Meyers began to have a problem with absenteeism. The committee decided that Meyers should repeat his sophomore year to commence in the fall of 2000. During that fall semester, Meyers received one "F" and one "D" and one incomplete. Meyers was then advised that the academic committee would meet in January to consider his dismissal for receiving failing grades in a repeated year. The meeting was re-scheduled twice because Meyers failed to appear. When Meyers did address the committee, it decided to give him the opportunity to repeat his sophomore year again commencing in the fall

of 2001. Meyers was granted a leave of absence for the spring 2001 and summer 2001 sessions.

¶ 10. Meyers was on academic probation and warned by letter that he would have to pass all required courses with a grade of CD or better and earn a 2.0 grade point average. In the fall 2001 semester, Meyers received one "F," two "D's," one "U" and one incomplete. Meyers was allowed to continue and continued having problems both in the spring 2002 semester and the summer 2002 session. Meyers then was granted a leave of absence for the remainder of the summer and for the spring 2002 sessions. Meyers was advised that he would be allowed to resume in January 2003, but he had to present documentation from a treating physician. Other correspondence between the school and Meyers continued. Eventually, Meyers submitted a letter citing undefined psychological problems "of an abusive nature during my childhood and adolescent years."

¶ 11. Meyers was allowed to resume studies during the spring 2003 session as a sophomore, and take all twelve credits as "independent study." In March 2003, one of Meyers' professors advised the dean that Meyers was earning an "F" in one of the independent study courses and it could not be remediated. In a May 29, 2003 letter, Meyers was advised that he was being dismissed from the dental school because he earned an "F" in four independent study courses.

¶ 12. Amir contends that Meyers' situation demonstrates much more preferential treatment and many more chances than Amir was afforded. Marquette responds that Meyers and Amir were not similarly situated. Rather, Meyers successfully completed his first year, whereas Amir did not. Meyers repeated his sophomore year, but Amir was required to repeat his fresh-

man year. In ruling in Marquette's favor, the trial court based its decision on the lack of similarity:

> Now with respect to Daniel Meyers. He started dental school in the fall of 1998. He did not fail any classes in his first year. His first semester grades were A, BC, AB, B, B, BC and C. His second semester grades were A, C, C, CD, CD and C. His problem with grades did not start until his second year of dental school. I reviewed the documents submitted regarding Mr. Meyers, and it's clear from those documents that there was a problem with Mr. Meyers being physically absent from school and failing to respond to correspondence from Marquette. A July 2002 letter from Doctor Lynch to Mr. Meyers outlines the difficult time Marquette had in getting in contact with him. Further, Marquette was advised by Mr. Meyers that he was having personal problems concerning an abusive childhood and that he was trying to address his problems. Mr. Meyers was ultimately dismissed from the dental school by Doctor Lynch. His consistent absence from school was clearly a problem with respect to his performance in dental school. He is not factually similar to Mr. Amir. Mr. Meyers' conduct is not similar to that of the Plaintiff's. Based upon this record, I am unable to find that the individuals asserted by Plaintiff in opposition to summary judgment . . . are comparable to Mr. Amir in all material respects . . . . Mr. Amir had academic problems from the get go when he started dental school. He failed classes beginning in his first semester of dental school. The Plaintiff has not established a prima facie case of discrimination.

¶ 13. In order to survive a motion for summary judgment, Amir needs to demonstrate a *prima facie* case under § 1981. *See Benton v. Cousins Props., Inc.,* 230 F. Supp. 2d 1351, 1369 (N.D. Ga. 2002), *aff'd,* 97 Fed. Appx. 904 (11th Cir. 2004); *Farley v. Nationwide*

*Mut. Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir. 1999). To satisfy that standard, the appellant must show:

> (1) that []he is a member of a protected class; (2) that the allegedly discriminatory conduct concerned one or more of the activities enumerated in the statute; . . . and (3) that the defendants treated the plaintiff less favorably with regard to the allegedly discriminatory act than . . . other similarly situated persons who were outside plaintiff's protected class.

*Benton*, 230 F. Supp. 2d at 1370. The first two factors appear to be conceded. Thus, both parties to this appeal focus on the third factor.

██

¶ 14. Each side argues strenuously about whether Amir and Meyers were similarly situated. Amir points out all the facts and circumstances to suggest that the two were similarly situated. Marquette emphasizes all the facts and circumstances to distinguish any similarities between the two. This is not a question that we can decide as a matter of law. Rather, whether Amir and Meyers are similarly situated is so factually intensive that it presents a factual question, which must be decided by a fact-finder, who is presented with all the pertinent evidence. *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) ("As a general rule, whether individuals are similarly situated is a factual question for the jury."); *Chavez v. Illinois State Police*, 251 F.3d 612, 636 (7th Cir. 2001) (There is no "magic formula for determining whether someone is similarly situated. This is due, seemingly, to the essentially factual nature of the inquiry. Different factors will be relevant for different types of inquiries—it would be imprudent to turn a common-sense inquiry into a complicated legal one.").

¶ 15. Although Marquette is correct to point out that a "similarly situated" student must be similar in "all relevant respects," *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997), this determination, based on the facts and circumstances of the instant case, cannot be determined as a matter of law. Rather, the issue must be determined by the fact-finder.

¶ 16. Marquette also contends that even if we conclude there is a material issue of fact with respect to the issue of similarity, we should still affirm the trial court because Marquette has amply stated its non-discriminatory basis for dismissing Amir from the dental school, and there is no evidence that the legitimate reason for dismissal was simply pretextual. Thus, we now look at whether Amir has set forth sufficient evidence to create a genuine issue of material fact regarding whether Marquette's reason for dismissing him was merely pretext for discrimination.

¶ 17. Amir argues that the dramatic disparity in how Amir was treated, compared to Meyers, is sufficient evidence from which pretext can be inferred. We agree with Amir that at this point in the proceedings, there is sufficient evidence to survive a summary judgment motion. Marquette concedes that Meyers received more preferential treatment. The dean of Academic Affairs, Dr. Denis Lynch, admitted that Meyers' grades were substantially worse than Amir's grades. Dr. Lynch admitted that in comparing the two students, Amir was dismissed for receiving unsatisfactory grades during his first repeated year, while Meyers was not dismissed until the fourth time he was repeating his sophomore year.

¶ 18. Thus, Amir has "adduce[d] enough admissible evidence to raise genuine doubt as to the legiti-

macy of the defendant's motive, even if that evidence did not directly contradict or disprove defendant's articulated reasons for its actions." *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 n.8 (8th Cir. 1994). "[A] plaintiff need not prove that the real reason for an employer's action was discriminatory in order to survive a motion for summary judgment." *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir. 1995). All that is required to survive summary judgment is to provide sufficient evidence to demonstrate an inference of pretext. Here, Amir has submitted sufficient evidence to support his claim that Meyers was afforded much more preferential treatment in the degree of flexibility and chances before dismissal than Amir was afforded. One inference that may arise from the facts presented is that Amir was treated differently than Meyers due to his ethnicity.

■■

¶ 19. Marquette argues that the "academic deference" doctrine applies, requiring the court to presume that the dental school acted honestly and with integrity in dismissing Amir from the school. Amir responds that the academic deference doctrine cannot be invoked at the summary judgment stage to rebut a *prima facie* case, as summary judgment procedure requires that all inferences be drawn in favor of the non-moving party. *See Johnson v. Rogers Mem'l Hosp., Inc.*, 2005 WI 114, ¶ 30, 283 Wis. 2d 384, 700 N.W.2d 27. We agree. At this stage of the proceedings, we must draw all inferences in favor of Amir, the non-moving party. In applying that standard, it was premature to grant summary judgment in favor of Marquette.

¶ 20. The issue of whether Amir is similarly situated to Meyers and, if so, whether the stated reason for Amir's dismissal was pretextual, needs to be deter-

mined at trial by the fact-finder who listens to all the pertinent facts. Accordingly, we reverse the trial court's decision and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.