COURT OF APPEALS
DECISION
DATED AND FILED

February 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP202**

STATE OF WISCONSIN

Cir. Ct. No.  2020CV865

IN COURT OF APPEALS
DISTRICT III

---

GLENDALE STEWART,

   PLAINTIFF-APPELLANT,

 V.

MIKE POZORSKI, ELIZABETH EBERT, ERIC HILLMANN AND
POWER SPORTS PLUS, LLC,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from a judgment of the circuit court for Outagamie County:  EMILY I. LONERGAN, Judge.  *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Glendale Stewart, pro se, appeals the circuit court's granting of summary judgment to Mike Pozorski, Elizabeth Ebert, Eric Hillmann,[1] and Power Sports Plus, LLC (collectively, "Power Sports") and denying summary judgment to Stewart.[2] Stewart argues that the court erred by granting summary judgment to Power Sports and that the court erroneously exercised its discretion in numerous ways.[3] We reject Stewart's arguments and affirm.

## BACKGROUND

¶2 In April 2018, Power Sports purchased a 2004 Chevrolet Colorado ("the vehicle") with 103,234 miles on the odometer from Fox Valley Auto Auction for $4,420. On May 17, 2018, Hillmann performed a vehicle inspection

---

[1] Elizabeth Ebert was incorrectly named in this lawsuit as Beth Ebert. Eric Hillmann was incorrectly named in this lawsuit as Eric Hollmen. The caption was corrected by the Office of the Clerk of the Court of Appeals according to affidavits of record filed by the parties in this case.

[2] Pozorski is the sole member and owner of Power Sports Plus, LLC.

[3] Stewart's briefs address only the circuit court's granting of Power Sports' summary judgment motion and do not address the court's denial of his summary judgment motion. Because Stewart fails to argue the denial of his summary judgment motion in his briefs, we deem that issue abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 493, 588 N.W.2d 285 (Ct. App. 1998) ("[W]hen a party fails to argue an issue in its main appeal brief, the appellate court may treat the issue as having been abandoned, even though the issue was presented to the [circuit] court.").

that was of the type summarized in the Wisconsin Buyer's Guide.[4]  Meanwhile, Ebert performed a records review.  Hillmann's completion of the vehicle's inspection and Ebert's records review of the vehicle are reflected by their signatures on the Buyer's Guide form that Power Sports used to market the vehicle.  Under the "Used Vehicle General Condition" section of the Buyer's Guide form, the box for "Corrective welds / knowledge or evidence of repair to strut tower / floor pan /frame / or structural portion of unibody" was marked "NO."  The box for "Evidence or knowledge of frame repair or replacement" was also marked "NO."  Under "Vehicle Equipment Requirements," the "Frame or Structural Portion of Unibody"—which "includes damage, weakened by rust, repairs or alignment"—was marked "Legal."

¶3    Stewart inquired about the vehicle in response to Power Sports' online posting and spoke with Ebert.  Stewart stated that he was interested in the vehicle, set up a time to look at the vehicle, and agreed on a purchase price of $6,900.  On May 24, 2018, Stewart spent between forty and sixty minutes inspecting and test driving the vehicle.  While doing so, Stewart looked underneath the vehicle, saw that "everything looked good," and commented that someone "did a really good job of undercoating."

---

[4] The Wisconsin Buyer's Guide is a guide that dealerships must complete and display on a used motor vehicle to inform a prospective purchaser of that vehicle's condition.  *See* WIS. ADMIN. CODE § Trans 139.04(4)-(6) (Mar. 2020).  In this guide, prescribed by the Department of Transportation as a form, dealerships report the existing condition of a used vehicle "based on what the dealership can find using *reasonable care*."  According to the guide, the reasonable care standard requires a dealership to test drive the vehicle and inspect the vehicle's interior and exterior, "including under the hood and under the vehicle," but it does not require the dealership to "take the vehicle apart (except brakes) or run tests unless necessary to diagnose apparent symptoms."  Dealerships must also report information received "from manufacturer and auction notices, prior owner documents and disclosures, and their own vehicle inspection and repair records."  Finally, dealerships report the vehicle's "history, use and permanent brands that are on the title or will be on the next title."

¶4      On that same day, Stewart purchased the vehicle for a total amount of $7,349.[5]  As part of his purchase, Stewart signed two documents noting that the vehicle was sold "AS IS."  First, Stewart signed the Buyer's Guide form.  The form provided that the vehicle was "sold AS IS and the dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle."  It also expressly informed Stewart of the fact that the information provided in the Buyer's Guide "is based on what the dealership can find using *reasonable care*."

¶5      Second, Stewart signed a purchase agreement that contained the same "as is" clause as the one on the Buyer's Guide form.  The agreement also provided that the terms "agreed to on the purchase contract are final" and that "[n]o oral representations are binding unless written on this form."  Finally, the agreement provided that the document was "the entire agreement" between the parties.

¶6      After purchasing the vehicle, Stewart encountered issues with the vehicle in July and October 2018.  Specifically, Stewart noticed water leaking into the vehicle, and he called Power Sports to discuss this issue.  Both times, Power Sports attempted to help Stewart resolve the problem.  In October 2018, Stewart took the vehicle to Zimbrick Buick GMC to address the water issue.  Zimbrick resolved the issue and performed a twenty-seven-point inspection of the vehicle. The inspection did not find any issues with the vehicle's frame.

¶7      Stewart then filed a complaint with the Wisconsin Department of Transportation (DOT) against Power Sports regarding the leaking-water issue.

---

[5] This amount reflects the agreed-upon purchase price of $6,900 plus sales tax and other fees.

The DOT, however, felt it could not "conclusively prove [in court] the issues [that Stewart was] experiencing were a pre-existing condition at time of purchase." As a result, the DOT found no violations upon which it could take formal action and closed the complaint. In April 2019, John Fladger, a relative of Stewart, replaced the rear shocks on the vehicle. Fladger worked underneath the vehicle to replace the shocks, and he did not notice any issues with the vehicle's frame.

¶8     In October or November 2019, Stewart lost control of the vehicle and drove over a curb and into a snowbank. Stewart stated that this happened because his brakes locked up, causing the vehicle to slide. On November 20, 2019, Stewart took the vehicle to a repair shop to have its brakes examined. The repair shop determined it could not repair the brakes because the vehicle's frame was cracked, and the shop employee did not want to put the vehicle on a lift. The shop employee also noticed that rags were placed inside the vehicle's frame.

¶9     In January 2020, Stewart filed another complaint with the DOT against Power Sports regarding the vehicle's frame. Two DOT investigators inspected the frame. The investigators noted that several parts of the frame were corroded and had holes and that the left side of the frame was cracked. The investigators further noted a black substance over the metal on the frame rails that "appeared to be a spray on type of substance."

¶10     The DOT determined that the frame was not legal "because of the various holes, corrosion and rust that [are] present." Because of the amount of time that had passed since Stewart purchased the vehicle, however, the DOT could not "make a definitive determination that [the] vehicle[']s frame [was] in the same condition as when it was purchased." Because the DOT could not "prove how,

when, or where the undercoating was placed on the vehicle, [it could not] compel the dealership to assist with any settlement."

¶11     In July 2020, Stewart filed suit against Power Sports in the Dane County Circuit Court.  Stewart alleged that Power Sports committed fraud, made a fraudulent representation under WIS. STAT. § 100.18(1) (2021-22),[6] and conspired to defraud him by concealing or intentionally failing to disclose the condition of the vehicle's frame when Power Sports sold the vehicle to Stewart.  Stewart also alleged that Power Sports retaliated against him by refusing to repair his vehicle after he filed complaints with the DOT regarding the vehicle.  Stewart further alleged that Power Sports unlawfully discriminated against him on the basis of his race and color by selling him a vehicle it "knew or should have reasonably known was 'unsafe and not legal' to drive."

¶12     After a change of venue and several discovery motions, both Stewart and Power Sports moved for summary judgment in late 2021.  Following briefing by the parties, in January 2022, the circuit court held a hearing on the motions and granted Power Sports' motion.  The court first concluded that the economic loss doctrine barred Stewart's fraud and conspiracy to defraud claims.  The court then dismissed Stewart's retaliation and racial discrimination claims because they were not recognized causes of action in Wisconsin.  Finally, the court concluded that Stewart failed to establish an issue of fact to be tried by a jury for his WIS. STAT. § 100.18(1) claim because Stewart failed to provide any evidence of the vehicle's condition at the time that he purchased the vehicle.

---

[6] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶13 During the hearing, the circuit court asked Stewart whether he had any evidence that the vehicle's frame was damaged when he purchased the vehicle and whether Stewart had any evidence that Power Sports, after a reasonable inspection, should have noticed the damaged frame. Stewart answered only that Power Sports was required to inspect the vehicle's underside and that he did not see the damaged frame when he purchased the vehicle because Power Sports had covered up the damage. The court noted that the parties were at the summary judgment stage and that Stewart had not presented any evidence suggesting that the damaged frame existed at the time Stewart purchased the vehicle. It further noted that Stewart had not provided an expert to opine that the frame was likely in the same condition at the time of sale as it was when Stewart discovered the damaged frame.

¶14 The circuit court also noted that Stewart did not provide any evidence that the vehicle's prior, non-dealership owners did not apply undercoating to the frame or did not put rags in the frame. The court explained that Stewart did not contact the prior owners, ask them for affidavits, or ask them for a signed statement. The court further explained that in a summary judgment motion, Stewart was required to provide some evidence indicating that the matter should go to trial and that Stewart could have provided the evidence from prior owners through a deposition, a signed statement, or an affidavit.[7] Because Stewart had not produced any evidence to support his WIS. STAT. § 100.18(1) claim, the court granted summary judgment to Power Sports on that claim.

---

[7] The circuit court denied Stewart's oral request for additional time to contact the prior owners.

¶15 Stewart objected to a proposed order that Power Sports submitted summarizing the circuit court's oral ruling. In his objection, Stewart sought reconsideration of the summary judgment ruling because he had now obtained the information from the prior owners that the court requested. Stewart attached an email from one prior owner suggesting that he would sign an affidavit regarding the vehicle's condition when he sold it. Although Stewart implies that the affidavit would have been beneficial to his position, the contents of that affidavit are unknown because Stewart did not provide the court with the actual affidavit. Stewart also argued that the court was biased and prejudiced against him because it refused to give him time to obtain affidavits from the prior owners before ruling on the parties' motions. Finally, Stewart argued that Power Sports was not entitled to statutory costs.

¶16 The circuit court issued a written decision rejecting Stewart's objections. The court denied Stewart's request to reconsider its summary judgment decision because there was no evidence to support Stewart's WIS. STAT. § 100.18(1) claim and the email that Stewart provided came after the court had already properly ruled on the summary judgment motions under standard court procedures. The court also concluded that it was not biased simply because it ruled against Stewart. Finally, the court concluded that Power Sports was entitled to statutory costs under the mandatory provision in WIS. STAT. § 814.03(1).

¶17 Stewart now appeals. Additional facts will be provided as necessary below.

## DISCUSSION

### I. The circuit court did not err by granting summary judgment in favor of Power Sports.

¶18    "Summary judgment is used to determine whether there are any disputed issues for trial." *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 289, 507 N.W.2d 136 (Ct. App. 1993).  We review a circuit court's summary judgment decision de novo, applying the same methodology as the circuit court.  *Amir v. Marquette Univ.*, 2006 WI App 252, ¶7, 297 Wis. 2d 326, 727 N.W.2d 63.  A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).

¶19    "[O]nce sufficient time for discovery has passed, it is the burden of the party asserting a claim on which it bears the burden of proof at trial 'to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Transportation Ins. Co.*, 179 Wis. 2d at 291-92 (citation omitted).  "The moving party is entitled to summary judgment upon 'a complete failure of proof' by the party opposing summary judgment as to an essential element as to which that party bears the burden of proof."  *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 666, 476 N.W.2d 593 (Ct. App. 1991) (citation omitted).

¶20    Stewart argues that he met his burden to establish the elements of his claims for fraud, violation of WIS. STAT. § 100.18(1), and conspiracy to defraud because he showed that Power Sports knew, or should have known, that the vehicle's frame was damaged and that Power Sports made an untrue

representation about the vehicle's condition at the time of sale. In particular, Stewart asserts that the damage to the vehicle's frame must have existed at the time of sale because Power Sports had a duty to inspect the vehicle and it should have discovered the damaged frame upon such an inspection. He adds that Power Sports knew the frame was damaged because, he claims, it used "[f]resh shop rags, paint and undercoating" to "cover up the damages." Testimony by prior owners of the vehicle at trial, as opposed to affidavits that could have been part of the summary judgment record, would have shown that Power Sports knew the frame was damaged. Stewart also argues that expert testimony was not necessary because the rags, paint, undercoating, and prior owners' testimony would have constituted sufficient evidence to establish his claims.

¶21    In order to establish his claim for fraud, Stewart had to show that: (1) Power Sports made a representation of fact that was untrue; (2) Power Sports made that representation "either knowing that it was untrue, or recklessly not caring whether it was true or false"; (3) Power Sports made the representation with the intent to deceive Stewart in order to induce Stewart to act on the representation to his pecuniary damage; and (4) Stewart "believed that the representation was true and relied on it." *See Malzewski v. Rapkin*, 2006 WI App 183, ¶17, 296 Wis. 2d 98, 723 N.W.2d 156.[8]

¶22    In order to establish his claim under WIS. STAT. § 100.18(1), Stewart had to show that: (1) Power Sports "made a representation to the public with the intent to induce an obligation"; (2) Power Sports' representation was "untrue,

---

[8] While these are the elements of a claim for intentional misrepresentation, fraud and intentional misrepresentation are used interchangeably. *Doe v. Archdiocese of Milwaukee*, 2005 WI 123, ¶50 n.10, 284 Wis. 2d 307, 700 N.W.2d 180.

deceptive or misleading"; and (3) "the representation materially induced (caused) a pecuniary loss to [Stewart]." *See **Novell v. Migliaccio***, 2008 WI 44, ¶49, 309 Wis. 2d 132, 749 N.W.2d 544; *see also* § 100.18(1).

¶23    Given the foregoing elements, both Stewart's fraud and WIS. STAT. § 100.18(1) claims required him to provide some evidence tending to show that Power Sports made an untrue representation of fact.  Here, Stewart alleged that Power Sports' representation on the Buyer's Guide form that the vehicle's frame was legal was untrue.  Stewart thus had to provide evidence that the vehicle's frame was damaged—and therefore not legal—at the time of sale *and* that Power Sports should have discovered the damage after performing a reasonable inspection.  Here, the circuit court determined that Stewart failed to produce such evidence.  We agree.

¶24    First, Stewart failed to present any evidence that the vehicle's frame was damaged before he discovered the damage eighteen months after purchasing the vehicle.  Rather, nearly all evidence of record suggests otherwise.  For example, the vehicle went through several inspections that did not reveal any issues with the frame: Power Sports' May 2018 inspection, Stewart's own inspection of the vehicle on the day he purchased it, and Zimbrick's twenty-seven-point inspection in October 2018.  Additionally, Fladger worked underneath the vehicle to replace the rear shocks in April 2019 and did not notice any issues with the frame.  It was not until November 2019—about eighteen months after Stewart purchased the vehicle—that the damaged frame was discovered.

¶25    Second, Stewart failed to present any evidence from any prior owners on the vehicle's condition when they sold the vehicle to Power Sports. The vehicle had at least two prior owners before Power Sports purchased it.

Stewart relies on the notion that Power Sports used rags—i.e., those that the shop employee discovered in the vehicle's frame eighteen months after Stewart purchased the vehicle—and applied undercoating to conceal the damaged frame. From these assumptions, he argues that the rags and undercoating invariably serve as evidence that Power Sports knew the frame was damaged when Stewart purchased the vehicle. Because Power Sports inspected the vehicle, he adds, it must have known that the frame was damaged, which is precisely what—Stewart surmises—prompted it to place rags in the vehicle's frame and apply undercoating to conceal the damage.

¶26     Such pure speculation is insufficient for Stewart to survive summary judgment. Stewart must provide some evidence demonstrating that it was Power Sports—and not a prior owner of the vehicle—that placed the rags in the frame or applied undercoating to the frame.[9] The presence of rags in the vehicle's frame alone does not establish that Power Sports placed the rags in the frame. Nor does it establish that Power Sports applied undercoating to conceal the damaged frame. Stewart does not provide any evidence as to who placed the rags or applied undercoating to the frame. Instead, he merely assumes that it was Power Sports that did so because it "performs auto body work" and "had the mean[s] and the motive to apply the materials."

¶27     Based on the numerous inspections that did not reveal any issues with the vehicle's frame and the lack of evidence from anyone regarding the

---

[9] Although Stewart argues he provided evidence from prior owners, he did so only after the circuit court granted summary judgment to Power Sports, despite him having over a year to conduct such discovery. Further, Stewart provided only an email exchange between himself and a prior owner suggesting the prior owner's intent to sign an affidavit regarding the vehicle's condition, but the contents of that affidavit are not provided.

placement of the rags and the undercoating, Stewart cannot establish that the frame was damaged at the time of sale or that Power Sports discovered the damage and concealed it. Without more, a jury would be unable to determine—beyond mere speculation—when the damage to the vehicle's frame occurred and whether the frame was damaged at the time of sale.

¶28 Finally, and contrary to Stewart's repeated assertions, simply because Power Sports had a duty to inspect the vehicle using "reasonable care" does not mean that Power Sports would have, or should have, discovered the damaged frame. Stewart failed to provide any evidence of what the required "reasonable care" inspection entails and whether it would have uncovered the damaged frame. Such evidence requires expert testimony, given that the specifics of a thorough and reasonable vehicle inspection are not within a juror's common knowledge. *See Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 152, 172 N.W.2d 427 (1969) (explaining that in situations that are so complex or technical that a jury would be speculating without the assistance of expert testimony, the lack of expert testimony constitutes an insufficiency of proof).

¶29 Stewart argues that expert testimony is not necessary because the reasonable care standard in the DOT report describes what a reasonable inspection entails. The reasonable care standard provides an overview of an inspection (exterior, interior, under the hood, and under the vehicle), but it does not thoroughly explain each part of the inspection, including the manner by which it should be conducted. Without knowing what a reasonable inspection entails within the industry of used vehicle sales, a jury would be unable to determine—and, again, would need to speculate—whether Power Sports would have, or should have, discovered the damaged frame during such an inspection.

¶30 In short, Stewart failed to produce any evidence tending to show that Power Sports knew, or should have known, that the vehicle's frame was damaged, that an inspection using "reasonable care" would have revealed the damaged frame, or that Power Sports placed rags or applied undercoating to conceal the damage. Consequently, Stewart failed to produce evidence allowing a reasonable fact finder to determine that Power Sports made an untrue representation of fact on the Buyer's Guide form it used when it indicated that the frame was legal. He therefore failed to establish an essential element of his fraud and WIS. STAT. § 100.18(1) claims. Because Stewart failed to establish an essential element of his fraud claim, Stewart also failed to establish an essential element of his conspiracy to defraud claim, given that it is based on the same allegation that Power Sports knew the frame was damaged but still represented it was legal on the Buyer's Guide form.

¶31 Thus, Stewart failed to show that an issue of material fact existed as to his fraud, conspiracy to defraud, and WIS. STAT. § 100.18(1) claims. Accordingly, the circuit court properly granted summary judgment to Power Sports on those claims.[10]

---

[10] Although Stewart failed to show that an issue of material fact existed for these claims, his fraud and conspiracy to defraud claims are also barred by the economic loss doctrine. The economic loss doctrine bars "recovery in tort for economic losses resulting from the failure of a product to live up to a contracting party's expectations." *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶24, 270 Wis. 2d 146, 677 N.W.2d 233. The doctrine is "based on an understanding that contract law and the law of warranty, in particular, is better suited than tort law for dealing with purely economic loss in the commercial arena," *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 403-04, 573 N.W.2d 842 (1998), and it requires contracting parties to pursue only contractual remedies when asserting a claim of economic loss, *Tietsworth*, 270 Wis. 2d 146, ¶24. Because Stewart's fraud and conspiracy to defraud claims arise out of the purchase agreement he made with Power Sports, the economic loss doctrine bars Stewart's claims for fraud and conspiracy to defraud.

(continued)

14

¶32    Stewart also contends that he met his burden to establish the elements of his discrimination and retaliation claims under WIS. STAT. § 106.52(3)(a)2. because he showed that Power Sports "overcharged him for a hazardous vehicle with practically no real value due to his race and color" and that Power Sports retaliated against him because of complaints Stewart filed with the DOT.    Section 106.52(3)(a)2. prohibits a person from giving "preferential treatment to some classes of persons in providing services or facilities in any public place of accommodation … because of … race [or] color."  Power Sports, however, did not provide "services" to Stewart under the statute, but instead it sold goods to Stewart.  Thus, § 106.52(3)(a)2. does not apply as a matter of law.

¶33    Moreover, Stewart failed to provide any evidence showing that Power Sports gave preferential treatment to some other class of persons.  Stewart's discrimination claim is based only on his unsupported allegation that Power Sports misrepresented that the frame was legal when he purchased the vehicle.  As we concluded above, Stewart failed to provide evidence of Power Sports' misrepresentation.  Additionally, Power Sports publicly posted the vehicle for sale online at a price of $7,500, and the vehicle was sold at less than the posted price. Any person could have responded to the advertisement and paid that amount. Stewart simply speculates that because Power Sports knew the frame was damaged and misrepresented that the frame was legal, Power Sports unlawfully

Stewart argues, however, that the economic loss doctrine does not bar his fraud and conspiracy to defraud claims because it only applies to manufacturers and Power Sports did not manufacture the vehicle.  While he cites two cases that held the economic loss doctrine barred claims against manufacturers, neither case held that the doctrine is limited to claims against manufacturers. *See Daanen & Janssen, Inc.*, 216 Wis. 2d 395; *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 592 N.W.2d 201 (1999).  Stewart does not develop his argument further, and he does not point to any other cases holding that the doctrine is so limited.

discriminated against him when it sold the vehicle to him. The law does not allow for such a claim to proceed based on mere speculation and no evidence.

¶34 Stewart's retaliation claim similarly fails because Power Sports was not obligated to make repairs to Stewart's vehicle. As stated in the purchase agreement and the Buyer's Guide form, Power Sports sold the vehicle to Stewart "as is" and was not responsible for any repairs.

¶35 In sum, Stewart cannot establish his discrimination and retaliation claims under WIS. STAT. § 106.52(3)(a)2., and he failed to provide any evidence showing that an issue of material fact existed as to those claims. Therefore, the circuit court properly granted summary judgment to Power Sports on those claims.

## II. The circuit court did not erroneously exercise its discretion on any of the bases that Stewart claims.

¶36 Stewart next argues that the circuit court erroneously exercised its discretion in three ways: (1) by denying his request for more time to obtain affidavits from prior owners of the vehicle; (2) by failing to subpoena the prior owners to come to court and testify; and (3) by ordering statutory costs in favor of Power Sports. We uphold a circuit court's exercise of discretion as long as "it examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, arrived at a conclusion that a reasonable judge could reach." *DeWitt Ross & Stevens, S.C. v. Galaxy Gaming & Racing Ltd. P'ship*, 2004 WI 92, ¶54, 273 Wis. 2d 577, 682 N.W.2d 839.

### A. *Extension of time*

¶37 Throughout his appellate briefs, Stewart argues that the circuit court unfairly denied his request to obtain affidavits from the vehicle's prior owners,

after granting Power Sports' request to extend the deadline to file dispositive motions. At a prior motion hearing, Power Sports requested to extend the deadline for both parties to file dispositive motions because Power Sports had not yet taken Stewart's deposition. The court granted the request. During the summary judgment hearing, however, the court denied Stewart's request for additional time to contact prior owners. The court explained that Stewart had two months after receiving Power Sports' summary judgment brief—and one and one-half years since the case was filed—to contact the prior owners and obtain depositions, statements, or affidavits from them. He failed to do so.

¶38 In its written decision, the circuit court further explained its reasoning. First, Power Sports' request to extend the dispositive motion deadline was based on the difficulty of scheduling Stewart's deposition, whereas Stewart did not provide any explanation for why he had not sought out evidence regarding the prior owners before the summary judgment hearing. Second, Power Sports' request was made before the deadline to file dispositive motions had expired, while Stewart's request was made during the summary judgment hearing and well after the parties' deadline to file briefs and supporting documents had expired. Finally, Power Sports' request did not require moving the trial dates as it was made with enough time to accommodate the request within the court's existing scheduling order. In contrast, Stewart's request left the court with the choice of either leaving the trial dates on the calendar (with the uncertainty of whether the trial would occur) or adjourning the trial dates and rescheduling, which would have caused significant delay.

¶39 In short, the circuit court explained that Stewart made an untimely request for more time to obtain affidavits from the prior owners and that Stewart failed to provide a reason for why he had not obtained those affidavits before the

summary judgment filing deadline. The court further explained that allowing the request would have delayed proceedings. These clear explanations constitute a proper exercise of the court's discretion in denying Stewart's request for additional time.

## B. Subpoenas

¶40 Stewart also argues that the circuit court itself should have subpoenaed the prior owners to testify in court as to whether they placed rags in the vehicle's frame and applied undercoating to the frame, instead of requesting affidavits. The court, however, explained that the parties were at the summary judgment stage and that it was plainly Stewart's burden to provide that evidence. The court explained that Stewart could have presented this evidence in the form of depositions, affidavits, or signed statements, but he did not.

¶41 Furthermore, the circuit court explained that Stewart had to provide some evidence indicating why the matter should go to trial but that he had not presented any evidence on the vehicle's condition at the time of sale. The court clearly explained what was required at summary judgment and what Stewart had to demonstrate to permit the matter to be tried. The court had no authority, much less an obligation, to subpoena the prior owners. To the extent Stewart argues that the court erroneously exercised its discretion for this reason, we conclude that it did not.

## C. Statutory costs

¶42 Stewart further argues that he should not have to pay costs for a deposition that opposing counsel requested. A prevailing defendant is entitled to statutory costs against an unsuccessful plaintiff under WIS. STAT. § 814.03(1).

*Taylor v. St. Croix Chippewa Indians*, 229 Wis. 2d 688, 696, 599 N.W.2d 924 (Ct. App. 1999). Section 814.03(1) provides that if a plaintiff is not entitled to costs, "the defendant shall be allowed costs." Here, the circuit court's written decision explained that § 814.03(1) is a mandatory provision and that Power Sports, as the prevailing party, was entitled to statutory costs. *See Taylor*, 229 Wis. 2d at 695-96. Thus, the court did not erroneously exercise its discretion in ordering statutory costs under § 814.03(1).

**III. Stewart did not establish that the circuit court was biased against him.**

¶43 Finally, Stewart argues that the circuit court did not treat him fairly because it did nothing when Stewart complained of Power Sports' counsel's discovery tactics and when Power Sports did not comply with Stewart's discovery requests. Specifically, Stewart asserts that Power Sports provided untimely and incomplete responses to his discovery requests and did not provide notarized interrogatories. Stewart also argues that he was not treated fairly because the court did not grant Stewart's belated request to obtain affidavits from prior owners, but it did grant Power Sports' request to extend the deadline to file dispositive motions.

¶44 We review claims of judicial bias de novo. *Miller v. Carroll*, 2020 WI 56, ¶15, 392 Wis. 2d 49, 944 N.W.2d 542. "We presume that a judge has acted fairly, impartially, and without bias." *Id.*, ¶16. The party asserting judicial bias must overcome this presumption by demonstrating bias by a preponderance of the evidence. *Id.* Wisconsin courts take both a subjective and objective approach to determine whether a party has rebutted the presumption. *Id.*, ¶21. Subjective bias exists when a judge has "any personal doubts as to whether [he or she] can avoid partiality to one side." *State v. Gudgeon*, 2006 WI App 143, ¶20, 295

Wis. 2d 189, 720 N.W.2d 114. Objective bias exists when there is actual bias, *id.*, ¶21, or when "there is 'a serious risk of actual bias—based on objective and reasonable perceptions.'" *Miller*, 392 Wis. 2d 49, ¶24 (citation omitted).

¶45 Here, the record does not remotely reveal any bias by the circuit court, and Stewart provides no evidence to rebut the presumption that the court acted fairly, impartially, and without bias. Indeed, the record reflects the court as being remarkably fair and accommodating to Stewart. As to Stewart's specific complaints, first, the court addressed Stewart's discovery concerns at a hearing on his motion to compel. The court granted Stewart's motion to compel with respect to the notarized documents that he requested, and Power Sports then provided Stewart with those notarized documents.

¶46 Second, the circuit court addressed Stewart's concerns with Power Sports' discovery responses. It explained that some of Stewart's questions called for legal conclusions, such as whether Power Sports did or did not do something in accordance with DOT standards. The court, citing WIS. STAT. § 804.08, noted that even though Power Sports objected to Stewart's questions and was not required to answer them, it still provided adequate responses to those questions.[11] Furthermore, the court explained to Stewart that he had to break down the questions more specifically and that he could take depositions if he wanted more specific answers. Thus, the court explained the propriety of Power Sports' discovery responses and what Stewart needed to do if he wanted more specific responses.

---

[11] "Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer." WIS. STAT. § 804.08(1)(b).

¶47     Finally, as noted above, the circuit court clearly explained its reasons for treating Stewart's request for an extension of time differently than Power Sports' request for an extension of time. *See supra* ¶¶37-39. As the court noted, the differing treatments were based on the different circumstances surrounding the requests. In sum, the record demonstrates that the court addressed Stewart's discovery concerns and clearly explained its reasons for treating the time extension requests differently. Stewart does not provide any other evidence that demonstrates bias, and he therefore fails to rebut the presumption that the court acted fairly, impartially, and without bias.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.